**CITY OF ARCADIA, et al., Plaintiffs,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants,**

and

**Natural Resources Defense Council, et al., Defendants–Intervenors.**

No. C 02–5244 SBA.

United States District Court, N.D. California.

May 16, 2003.

Noam I. Duzman, Richard Montevideo, Robert S. Bower, Rutan & Tucker LLP, Costa Mesa, CA, for plaintiffs.

Charles M. O'Connor, AUSA & Chief, Environmental & Natural Resources, United States Attorney's Office, San Francisco, CA, S. Randall Humm, Pamela Tonglao, U.S. Department of Justice, Environmental & Natural Resources Div., Washington, DC, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, DENYING AS MOOT PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DISMISSING ACTION

ARMSTRONG, District Judge.

Plaintiffs City of Arcadia and other California cities (collectively, "Plaintiffs") bring this action against defendants United States Environmental Protection Agency ("EPA"), the EPA Administrator, and the EPA Region IX Administrator (collectively, "Defendants") for injunctive and declaratory relief. The Natural Resources Defense Council, Santa Monica BayKeeper, and Heal the Bay (collectively, "Intervenors") have intervened as defendants.

Now before the Court are Defendants' Motion to Dismiss Second Amended Complaint (the "Motion to Dismiss"), in which Intervenors join, and Plaintiffs' Motion for Summary Adjudication of Issues (the "Motion for Partial Summary Judgment"). Having read and considered the papers submitted and being fully informed, the Court GRANTS the Motion to Dismiss, DENIES AS MOOT the Motion for Partial Summary Judgment, and DISMISSES this action.[1]

### I. BACKGROUND [2]

#### A. Statutory and Regulatory Background

##### 1. Water Pollution Control Under the Clean Water Act

The Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1387, utilizes two fundamental approaches to control water pollution: technology-based regulations and water quality standards. Technology-based

1. These matters are suitable for disposition without a hearing. *See* Fed.R.Civ.P. 78; Civ. L.R. 7–1(b).

2. Over the years the Court has had the pleasure and privilege of reading some excellent moving papers. Some of these submissions stand out as truly superlative. Defendants' opening and reply briefs for their Motion to Dismiss are shining examples of such superlative submissions. In these briefs Defendants discuss three areas of federal law generally regarded as highly complex—environmental regulation, administrative law, and justiciability—in direct, succinct, well-supported, and powerfully illuminating fashion. Whereas a poor presentation of the statutory and regulatory framework and Defendants' arguments might have required the Court to spend hours to apprehend their arguments, the high quality of Defendants' writing enabled the Court to grasp them in a matter of minutes. Defendants' briefs also thankfully avoid leveling the sorts of thinly veiled (or, at times, not-at-all-veiled) *ad hominem* attacks that unfortunately pervade too much legal writing nowadays. The Court thus commends Defendants' counsel for their outstanding writing and expresses its appreciation for it.

regulations seek to reduce pollution by requiring a discharger to effectuate equipment or process changes, without reference to the effect on the receiving water; water quality standards fix the permissible level of pollution in a specific body of water regardless of the source of pollution.

The National Pollutant Discharge Elimination System ("NPDES") permit program is a key means of implementing both technology-based requirements and water quality standards. 33 U.S.C. §§ 1311(b)(1)(C), 1342(a)(1); 40 C.F.R. § 122.44(a), (d)(1). An NPDES permit establishes specific limits of pollution for an individual discharger. A discharge of pollutants (other than dredged or fill material) from any "point source," which is defined as "any discernible, confined and discrete conveyance ... from which pollutants are or may be discharged," 33 U.S.C. § 1362(14), into the waters of the United States is prohibited unless that discharge complies with the discharge limits and other requirements of an NPDES permit. *Id.* §§ 1311(a), 1362(12). At present, 45 states, including California, are authorized to administer the NPDES permit program. State Program Status, *at* http://cfpub.epa.gov/npdes/statestats.cfm?program_id=45 & view=general. In the remaining states, EPA issues the permits. 33 U.S.C. § 1342(a).

### 2. *Total Maximum Daily Loads ("TMDLs")*

Section 303(d) of the CWA and EPA's implementing regulations require states to identify and prioritize waterbodies where technology-based effluent limitations and other required controls are insufficiently stringent to attain water quality standards. *See* 33 U.S.C. § 1313(d); 40 C.F.R. § 130.7(b). States must develop a "total maximum daily load," or "TMDL," for each pollutant of concern in each waterbody so identified. A TMDL represents the maximum amount of pollutant "load-ing" that a waterbody can receive from all combined sources without exceeding applicable state water quality standards. Although the term "total maximum daily load" is not expressly defined in the CWA, EPA's regulations define a TMDL for a pollutant as the sum of: (1) the "wasteload allocations," which is the amount of pollutant that can be discharged to a waterbody from point sources, (2) the "load allocations," which represent the amount of a pollutant in a waterbody attributable to nonpoint sources or natural background, and (3) a margin of safety. 40 C.F.R. §§ 130.2(g)-(i), 130.7(c)(1).

Under CWA Section 303(d)(2), EPA is required to review and approve or disapprove TMDLs established by states for impaired waters within thirty days of submission. 33 U.S.C. § 1313(d)(2). If EPA disapproves a state TMDL submission, EPA must issue its own TMDL for that waterbody within thirty days. *Id.*

### 3. *Implementation of TMDLs*

TMDLs established under Section 303(d)(1) of the CWA function primarily as planning devices and are not self-executing. *Pronsolino v. Nastri,* 291 F.3d 1123, 1129 (9th Cir.2002) ("TMDLs are primarily informational tools that allow the states to proceed from the identification of waters requiring additional planning to the required plans.") (citing *Alaska Ctr. for the Env't v. Browner,* 20 F.3d 981, 984–85 (9th Cir.1994)). A TMDL does not, by itself, prohibit any conduct or require any actions. Instead, each TMDL represents a goal that may be implemented by adjusting pollutant discharge requirements in individual NPDES permits or establishing nonpoint source controls. *See, e.g., Sierra Club v. Meiburg,* 296 F.3d 1021, 1025 (11th Cir.2002) ("Each TMDL serves as the goal for the level of that pollutant in the waterbody to which that TMDL applies. . . . The theory is that individual-discharge permits

will be adjusted and other measures taken so that the sum of that pollutant in the waterbody is reduced to the level specified by the TMDL."); *Idaho Sportsmen's Coalition v. Browner*, 951 F.Supp. 962, 966 (W.D.Wash.1996) ("TMDL development in itself does not reduce pollution.... TMDLs inform the design and implementation of pollution control measures."); *Pronsolino*, 291 F.3d at 1129 ("TMDLs serve as a link in an implementation chain that includes ... state or local plans for point and nonpoint source pollution reduction ...."); *Idaho Conservation League v. Thomas*, 91 F.3d 1345, 1347 (9th Cir.1996) (noting that a TMDL sets a goal for reducing pollutants). Thus, a TMDL forms the basis for further administrative actions that may require or prohibit conduct with respect to particularized pollutant discharges and waterbodies.

█ For point sources, limitations on pollutant loadings may be implemented through the NPDES permit system. 40 C.F.R. § 122.44(d)(1)(vii)(B). EPA regulations require that effluent limitations in NPDES permits be "consistent with the assumptions and requirements of any available wasteload allocation" in a TMDL. *Id.* For nonpoint sources, limitations on loadings are not subject to a federal nonpoint source permitting program, and therefore any nonpoint source reductions can be enforced against those responsible for the pollution only to the extent that a state institutes such reductions as regulatory requirements pursuant to state authority. *Pronsolino v. Marcus*, 91 F.Supp.2d 1337, 1355–56 (N.D.Cal.2000), *aff'd sub nom. Pronsolino v. Nastri*, 291 F.3d 1123 (9th Cir.2002).

#### 4. *California Water Quality Control Statutory and Regulatory Framework*

California effectuates the foregoing requirements of the CWA primarily through institutions and procedures set out in certain provisions of the California Water Code (the "Water Code"), including those of the California Porter–Cologne Water Quality Control Act (the "Porter–Cologne Act"), Cal. Water Code § 13000 *et seq.* These Water Code provisions established the State Water Resources Control Board (the "State Board") within the California Environmental Protection Agency to formulate and adopt state policy for water quality control. Cal. Water Code §§ 174–186, 13100, 13140. The State Board is designated as the state water pollution control agency for all purposes stated in the CWA and is the agency authorized to exercise powers delegated to it under the CWA. 33 U.S.C. § 1313; Cal. Water Code § 13160.

The Porter–Cologne Act established nine California Regional Water Quality Control Boards (individually, a "Regional Board"; collectively, the "Regional Boards"), Cal. Water Code §§ 13200, 13201, which operate under the purview of the State Board, *see id.* § 13225. Each Regional Board is comprised of nine members, *id.* § 13201, and is required to appoint an executive officer, *id.* § 13220(c), to whom the Regional Board may delegate all but some of its powers and duties, *id.* § 13223. Each Regional Board is required to formulate and adopt water quality control plans for all areas within the region. *Id.* § 13240. The State Board may approve such plan, or it may return it to the Regional Board for further submission and resubmission to the State Board. *Id.* § 13245. It must act on any water quality control plan within 60 days of a Regional Board's submission of such plan to the State Board, or 90 days after resubmission of such plan. *Id.* § 13246. A water quality control plan will not become effective unless and until it is approved by the State Board, followed by approval by the state's Office of Administrative Law ("OAL") in accordance with the appropriate proce-

dures. *Id.* § 13245; Cal. Gov't Code §§ 11340.2, 11349.3, 11353(b)(5).

The State Board is required to formulate, adopt, and revise general procedures for the formulation, adoption, and implementation of water quality control plans by the Regional Boards. Cal. Water Code § 13164. The State Board may adopt water quality control plans for purposes of the CWA that include the regional water quality control plans submitted by the Regional Boards. *See id.* § 13170. Such plans, when adopted by the State Board, supersede any regional water quality control plans for the same waters to the extent of any conflict. *Id.*

## B. *Factual Summary and Procedural History*

### 1. *The Consent Decree*

The events underlying the instant action were set in motion by the disposition of *Heal the Bay, Inc., et al. v. Browner, et al.*, No. C 98–4825 SBA (*"Heal the Bay"*), an action previously before this Court. In *Heal the Bay*, an individual and two environmental groups (which groups are now two of the three Intervenors in the instant action) brought a civil action against EPA, the EPA Administrator, and the EPA Region IX Administrator. Their suit primarily concerned EPA's alleged failure to perform its alleged duty under the CWA either to approve or to disapprove TMDLs submitted to EPA by the state of California.

On March 23, 1999, the Court filed an Amended Consent Decree (the "Consent Decree")[3] in which "EPA agree[d] to ensure that a TMDL [would] be completed for each and every pairing of a [Water Quality Limited Segment, as defined in 40 C.F.R. 130.2(j),] and an associated pollutant in the Los Angeles Region" set forth in an attachment to the Consent Decree by specified deadlines. (Consent Decree ¶¶ 2a, 2b, 3, 3c.)[4] Pursuant to the Consent Decree, for each pairing EPA was required either to approve a TMDL submitted by California by a specified deadline or, if it did not approve a TMDL by the date specified, to establish a TMDL within one year of the deadline, unless California submitted and EPA approved a TMDL prior to EPA's establishing the TMDL within the one-year period. (*Id.* ¶ 3a.) By March 24, 2002, EPA was required either to have approved a state-submitted TMDL for trash in the Los Angeles River or to have established the TMDL itself. (*Id.* ¶¶ 2d, 3a; *id.* Att. 2, 3.)[5]

3. No original consent decree was entered. Rather, according to Defendants' representations in their opening brief, the Consent Decree incorporated amendments from an original proposal at the urging of proposed intervenors California Association of Sanitation Agencies and California Alliance of POTWs. (*See* Mot. to Dismiss at 6.)

4. The Court takes judicial notice of the existence of the Consent Decree and the contents thereof. *See, e.g., Egan v. Teets,* 251 F.2d 571, 577 n. 10 (9th Cir.1957) (holding that district court was entitled to take judicial notice of prior proceedings involving same petitioner before same district court). The Consent Decree is filed as Docket No. 25 in *Heal the Bay,* No. C 98–4825 SBA.

5. Defendants contend that the relevant deadline was March 22, 2002, (Mot. to Dismiss at 6), and Plaintiffs echo this contention in their Second Amended Complaint, (Second Am. Compl. ¶ 25). Review of the terms of the Consent Decree, however, reveal that the deadline was a different date. The Consent Decree defines "effective date" as the date on which the Consent Decree is entered. (*Id.* ¶ 2d.) Although the Court signed the Consent Decree on March 22, 1999, (*id.* at 29), it was not entered on the docket until March 24, 1999. Under the terms of Attachments 2 and 3 of the Consent Decree, TMDLs for trash for all Water Quality Limited Segments the Los Angeles River were to be submitted by California within two years of the effective date— March 24, 2001. (*Id.* Atts. 2, 3.) Since EPA was required to ensure that a TMDL was in

## 2. EPA's Issuance of TMDLs and Approval of State-submitted TMDLs

One of the responsibilities of the Regional Board for the Los Angeles region (the "Los Angeles Regional Board") is to develop TMDLs under the CWA for waterbodies in Los Angeles and Ventura Counties. (Decl. of Dennis Dickerson in Supp. of EPA's Mot. to Dismiss (the "Dickerson Declaration") ¶ 2.) With few exceptions, TMDLs are developed as draft TMDLs by Los Angeles Regional Board staff and then submitted to the board to be adopted as amendments to the Los Angeles Regional Board's Water Quality Control Plan, which is known as the Basin Plan. (*Id.*) Basin Plan amendments are then submitted to the State Board, and then subsequently to the OAL; after they have been approved by both of these agencies, they are submitted to EPA. (*Id.*)

On September 19, 2001, the Los Angeles Regional Board adopted TMDLs for trash for the Los Angeles River watershed. (*Id.* ¶ 3.) "Trash" was defined as man-made litter, as defined in California Government Code § 68055.1(g). (*Id.* Ex. A at 2). These TMDLs (the "State Trash TMDLs") were approved by the State Board on February 19, 2002, by OAL on July 16, 2002, and ultimately by EPA by letter dated August 1, 2002. (*Id.* ¶ 3, Ex. C; Second Am. Compl. for Injunctive & Declaratory Relief ("SAC") ¶¶ 27, 30.) Prior to its approval of the State Trash TMDLs, how- ever, EPA issued its own TMDLs for trash for the Los Angeles River Basin (the "EPA Trash TMDLs") on March 19, 2002. (SAC ¶ 26; Decl. of David W. Smith in Supp. of EPA's Mot. to Dismiss (the "Smith Declaration") Ex. B.) The EPA's August 1, 2002, letter approving the State Trash TMDLs announced that they "supercede[d]" the EPA Trash TMDLs. (SAC ¶ 31; Smith Decl. ¶ 7, Ex. C.)

## 3. TMDLs Now in Effect and Implementation Provisions

Under the provisions of the TMDLs now in effect—the State Trash TMDLs—the numeric target is zero trash in the Los Angeles River. (Dickerson Decl. Ex. A at 16, 29.) Based on this target, California has determined that the wasteload allocations for trash in the Los Angeles River also must be zero. (*Id.*)

To achieve this goal, California has provided, along with the State Trash TMDLs, implementation provisions that specify a phasing-in of progressive reductions in municipal stormwater wasteload allocations over a ten-year period, following completion of a two-year initial baseline monitoring period. (*Id.* Ex. A at 21.) While the baseline monitoring program is taking place, cities will be deemed to be in compliance with the wasteload allocations provided that all of the trash that is collected during this period is disposed of in compliance with all applicable regulations. (*Id.* Ex. A at 27.) A baseline monitoring report is, due to the Los Angeles Regional Board by February 15, 2004. (*Id.* ¶ 6.)[6]

---

place within one year of California's deadline to submit a proposed TMDL, (*id.* ¶ 3a), the deadline for final approval or establishment of a TMDL was March 24, 2002.

Nevertheless, based on the evidence tendered by EPA, it is clear that EPA believed that the deadline was March 22, 2002. (*See* Decl. of David W. Smith in Supp. of EPA's Mot. to Dismiss, Ex. B at 2.) As is evident from the discussion below, this discrepancy is immaterial to the Court's analysis of the merits of the Motion to Dismiss.

**6.** Plaintiffs have filed Plaintiffs' Objections to Declarations of David W. Smith and Dennis Dickerson Offered by Defendants in Support of Defendants' Motion to Dismiss Second Amended Complaint ("Plaintiffs' Objections"). Plaintiffs' Objections challenge the admissibility of, *inter alia,* the statements in paragraph 6 of the Dickerson Declaration. The Court considers and resolves the objections to these statements in note 20, *infra.* Although Plaintiffs have objected to all the statements in paragraph 6, careful review of

The State Trash TMDLs and incremental wasteload allocations will be implemented through the Los Angeles stormwater permit, which the Los Angeles Regional Board will need to amend to incorporate specific, enforceable permit requirements. (*Id.* ¶ 8.) [7] The implementation provisions in the TMDLs allow permittees to "employ a variety of strategies to meet the progressive reductions in their Waste Load Allocations" and maintain that they "are free to implement trash reduction in any manner they choose." (*Id.* Ex. A at 29.) The wasteload reduction strategies are broadly clas-sified as either end-of-pipe full capture structural controls, partial capture control systems, and/or institutional controls. (*Id.*) The provisions state that permittees will be deemed to be in compliance with the final wasteload allocation for their associated drainage areas if they utilize "full capture systems" that are adequately sized and maintained and maintenance records are available for inspection by the Los Angeles Regional Board. (*Id.* Ex. A at 30.)

---

the arguments advanced in these objections reveals that they are not in fact objecting to the statement in paragraph 6 that "[t]he baseline monitoring report is due to the [Los Angeles] Regional Board by February 15, 2004." (Dickerson Decl. ¶ 6; *see* Pls.' Objections at 3–4.) To the extent that Plaintiffs are in fact objecting to this statement, however, the Court OVERRULES their objections to this statement for the reasons set forth in note 20, *infra.*

7. Under heading II.2 of Plaintiffs' Objections, Plaintiffs object to the statements in paragraph 8 of the Dickerson Declaration relating to the Los Angeles Regional Board's understanding of how the State Trash TMDLs will be implemented. (Pls.' Objections at 4.) All of the grounds on which Plaintiffs object are meritless. First, Plaintiffs contend that the statements are objectionable as "extra-record evidence." Such evidence, however, may be considered by the Court in connection with a motion to dismiss for lack of subject matter jurisdiction. *See Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). Since Defendants contend that Plaintiffs' challenges to the merits of EPA's approval of the State Trash TMDLs are unripe, and since the Court considers how these TMDLs will be implemented at least in part for this purpose, this evidence is properly before the Court. Second, Plaintiffs contend that the statements constitute inadmissible hearsay. These statements, however, do not contain or even implicitly rely on any out-of-court statement by one other than Mr. Dickerson for the truth of the matter stated.

Third, Plaintiffs claim that the statements lack foundation, although they do not explain what they mean by this. To the extent Plaintiffs are asserting that the declarant lacks personal knowledge of the Los Angeles Regional Board's intentions, that assertion is refuted by the fact that Mr. Dickerson has been Executive Officer of the board since 1997. (Dickerson Decl. ¶ 1.) Fourth, Plaintiffs insist that "the statements are objectionable and inadmissible as the best evidence of the implementation requirements vis-à-vis the TMDLs, is set forth in the TMDLs themselves, as well as in the terms of other enforceable documents, documenting the actions taken by the [Los Angeles] Regional Board, such as the terms of the Municipal Storm Water Permit referenced in the declaration." (Pls.' Objections at 4.) This objection misunderstands the nature of the "best evidence" rule: that rule applies *only* where the witness attempts to testify as to the *contents of a writing, recording, or photograph.* *See* Fed.R.Evid. 1002. Such is not the case here. Moreover, this objection reflects a fundamental misunderstanding of the nature of TMDLs. TMDLs are *not* self-executing; they require the appropriate state to issue regulations implementing them. It is also not clear what Plaintiffs mean by their assertion that documents "documenting the actions taken by the Regional Board" constitute "enforceable documents." Finally, Plaintiffs assail the statements at issue as "not competent." (*Id.*) Plaintiffs do not explain what they mean by this objection. The Court thus disregards it. Accordingly, the Court OVERRULES the objections under Heading II.2 of Plaintiffs' Objections.

#### 4. *The Instant Action*

Plaintiffs filed their initial complaint on June 28, 2002, in the United States District Court for the Central District of California. On August 30, 2002, they filed an amended complaint. On October 30, 2002, the case was transferred to this Court, the United States District Court for the Northern District of California. Pursuant to the parties' stipulation and the Court's Order thereon, Plaintiffs filed a Second Amended Complaint for Injunctive and Declaratory Relief (the "SAC" or "Complaint") on December 12, 2002.

The SAC is the operative complaint for purposes of the Motion to Dismiss and the Motion for Partial Summary Judgment. The SAC purports to assert three claims for relief. The First Claim for Relief is ostensibly brought pursuant to a provision of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706, (SAC at 34), although certain allegations thereunder also invoke the CWA, the Regulatory Flexibility Act (the "RFA"), and the Small Business Regulatory Enforcement Fairness Act of 1996 (the "SBREFA"), (*id.* ¶¶ 84–

85).[8] The First Claim for Relief alleges several violations of the APA: (1) EPA acted without authority and acted arbitrarily and capriciously by establishing the EPA Trash TMDLs prior to receiving for review the State Trash TMDLs, (SAC ¶¶ 78–79); (2) EPA acted without authority and arbitrarily and capriciously by reviewing and approving the State Trash TMDLs because EPA had already established the EPA Trash TMDLs, (*id.* ¶¶ 80, 83); (3) EPA acted arbitrarily and capriciously and in excess of its jurisdiction with regard to the manner by which it established the EPA Trash TMDLs, (*id.* ¶¶ 81–82); (4) the collective actions of California and EPA relating to issuance of the EPA Trash TMDLs and subsequent approval of the State Trash TMDLs constitute a "*de facto* TMDL procedure" that is arbitrary, capricious, and contrary to law, (*id.* ¶¶ 84–86);[9] and (5) EPA acted arbitrarily and capriciously by approving the State Trash TMDLs because those TMDLs were "patently defective" and established not in accordance with the procedures of the CWA and California law, (*id.* ¶ 87).[10] The Second Claim for Relief chal-

---

8. With respect to the First Claim for Relief, the SAC comes perilously close to violating Federal Rule of Civil Procedure 8(a)'s mandate of providing "a *short and plain* statement of the claim showing that the pleader is entitled to relief . . . ." Fed.R.Civ.P. 8(a) (emphasis added). In particular, Plaintiffs' practice of indicating that the First Claim for Relief is based exclusively on the APA, (SAC at 34), yet at the same time claiming in the allegations thereunder that the actions at issue violate other statutes, (*id.* ¶¶ 84–85), is confusing. Aside from potentially misleading Defendants as to the nature of the claims against them, it has required the Court to spend needless additional time and effort scrutinizing the allegations of the SAC because the Court cannot trust the accuracy of the headings of the SAC. The practice is especially reprehensible because the Court has already been forced to spend undue time and effort identifying and parsing out the five independent, discrete claims for relief that are set out in stream-of-consciousness fashion in the allegations un-

derlying the "First Claim for Relief"—which heading necessarily suggests a *single* claim. *See infra.*

9. This alleged *de facto* TMDL procedure is also claimed to violate the CWA, the RFA, and the SBREFA. (*Id.* ¶¶ 84–85.)

10. Although not clearly stated, this last claim (claim (5)) within the First Claim for Relief appears to challenge the *merits* of EPA's approval of the State Trash TMDLs, as opposed to, for example, challenging EPA's authority to approve *any* state-submitted TMDLs after it issued the EPA Trash TMDLs, (*see id.* ¶¶ 80, 83). Presumably, this last claim encompasses challenges to, for example, EPA's approval of the State Trash TMDLs where these TMDLs covered "unlisted" waters. (*See id.* ¶¶ 42, 49, 62.) Defendants appear to have also construed this claim as challenging the merits of EPA's approval of the State Trash TMDLs, and they move to dismiss this claim as unripe. (*See* Mot. to Dismiss at 20–24.) Plaintiffs

lenges the validity of two alleged agency actions, the EPA Trash TMDLs and the "*de facto* TMDL procedure," under the APA, 5 U.S.C. § 551 *et seq.;* the RFA, 5 U.S.C. § 601 *et seq.;* and the SBREFA, 5 U.S.C. § 801 *et seq.* (SAC at 40; *id.* ¶¶ 89–99.) The violations alleged under the Second Claim for Relief, however, appear to relate mostly to procedural requirements under the RFA and the SBREFA. (*See id.* ¶¶ 91–93, 95–98 (invoking 5 U.S.C. §§ 601(5), 601(6), 603, 604(a), 604(b), 605(b), and 611).)[11] The Third Claim for Relief is derivative of the first two claims. It seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, as to which party's interpretation of the law is correct and a judicial determination of Plaintiffs' rights and duties. (*Id.* ¶¶ 100–105.)

On January 13, 2003, Defendants and Intervenors filed answers to the SAC. On that same day, Defendants also filed the instant Motion to Dismiss, which seeks dismissal of the entire action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Intervenors filed Intervenors' Notice in Support of Defendants' Motion to Dismiss on February 3, 2003, indicating in brief fashion that they agreed with the arguments in the Motion to Dismiss and therefore supported the motion. On March 10, 2003, Plaintiffs filed their Motion for Partial Summary Judgment.

Most of the plaintiffs in the instant action are currently plaintiffs in a California state court action against the Los Angeles Regional Board and the State Board challenging the legality of the State Trash TMDLs. (*Id.* ¶ 33.) Three other lawsuits have similarly been filed challenging either

---

appear to concur in Defendants' construction of this claim. (*See* Pls.' Opp. Br. at 16–20.) Accordingly, the Court construes this last claim as challenging the merits of EPA's approval of the State Trash TMDLs.

**11.** This is yet another example of Plaintiffs' objectionable drafting of the SAC. In particular, the paragraph alleging improper agency action supposedly giving rise to the Second Claim for Relief, paragraph 96, identifies four bases on which the CWA, the APA, the RFA, and the SBREFA were violated. (*Id.* ¶ 96.) Of these four bases, however, only the first (denoted reason "(a)") appears to have anything to do with the APA; the remaining three ("(b)," "(c)," and "(d)") appear to relate solely to provisions of the RFA and SBREFA, at least based on the allegations of the previous paragraphs under the heading "Second Claim for Relief." (*Id.; compare id.* (*e.g.,* alleging that EPA failed to perform an initial screening of the EPA Trash TMDLs to determine whether they would have a significant economic impact on a substantial number of small entities) *with id.* ¶¶ 91–93, 95 (*e.g.,* alleging that RFA requires agencies to screen all proposed rules and identify whether such rules would have such an impact, (*id.* ¶ 92))).

The Court is thus left with the distinct impression that either Plaintiffs have been careless in drafting the Second Claim for Relief

or they have invoked various statutes and inserted a number of allegations in scattershot fashion in the hope that something will slip by Defendants undetected and "stick." Aside from arguably violating Rule 8(a), this practice is unfair not only to Defendants, but also to the Court, because it makes the Court's resolution of Defendants' arguments considerably more difficult. (Nor is the Court interested in any supporting evidence or clarification from Plaintiffs' counsel regarding the nature of their claims that is not in the four corners of the SAC or incorporated therein by reference. The SAC speaks for itself on that score.) Based on its review of the SAC, the Court construes the allegations underlying the Second Claim for Relief as alleging violation of the APA, the RFA, and the SBREFA only with respect to EPA's alleged failure to provide Plaintiffs with notice and an opportunity for comment with regard to the *de facto* TMDL procedure, discussed *infra,* and the establishment of the EPA Trash TMDLs; the Court construes them to allege violation of the RFA and the SBREFA, but not the APA, with regard to the remaining allegations under the heading of "Second Claim for Relief." (*See* SAC ¶ 96.)

California's establishment of the State Trash TMDLs or EPA's approval of the same. (*Id.*)

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

 Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't,* 236 F.3d 495, 499 (9th Cir.2001). " 'A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.' " *Id.* (quoting *Smith v. McCullough,* 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682 (1926)). In adjudicating such a motion, the court is not limited to the pleadings, and may properly consider extrinsic evidence. *See Ass'n of Am. Med. Colleges v. United States,* 217 F.3d 770, 778 (9th Cir.2000). The court presumes lack of jurisdiction until the plaintiff proves otherwise. *See Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989).

### B. Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block,* 250 F.3d 729, 731 (9th Cir.2001). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957);

*accord Johnson v. Knowles,* 113 F.3d 1114, 1117 (9th Cir.1997). The complaint is construed in the light most favorable to the plaintiff, and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *see also Everest & Jennings, Inc. v. Am. Motorists Ins. Co.,* 23 F.3d 226, 228 (9th Cir.1994). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro,* 250 F.3d at 731. In adjudicating a motion to dismiss, the court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

When the complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib., Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986). Leave to amend is properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir.1992).

## III. DISCUSSION

Defendants have filed a Motion to Dismiss; Plaintiffs have filed a Motion for Partial Summary Judgment. The Motion for Partial Summary Judgment seeks adjudication of issues pertaining to Plaintiffs' challenge to the procedural legitimacy of the State Trash TMDLs. Because the Court grants the Motion to Dismiss (as discussed below), it does not reach the merits of the Motion for Partial Summary Judgment and therefore denies it as moot. Accordingly, the following discussion per-

tains only to the Motion to Dismiss, except where noted.

At the outset, the Court notes that it need not analyze all the arguments presented in Defendants' opening brief because Plaintiffs concede that certain of their claims are moot. In particular, Defendants contend in their opening brief for the Motion to Dismiss that the EPA Trash TMDLs no longer have any force or effect because EPA has announced that the State Trash TMDLs "supercede" the EPA Trash TMDLs; consequently, Defendants maintain, Plaintiffs' claims that EPA lacked authority to establish the EPA Trash TMDLs, (SAC ¶ 78–79), and that the procedures by which EPA established them were unlawful, (*id.* ¶¶ 81–82, 90, 94, 96–97, 99), are moot. (Mot. to Dismiss at 12–15.) In their opposition brief, Plaintiffs express satisfaction with Defendants' assurances that the EPA Trash TMDLs are no longer (and can never be) in effect and therefore "withdraw their claims directly challenging the validity of EPA's TMDLs ...." (Pls.' Opp. Br. at 4 n. 6.) Defendants acknowledge this withdrawal in their reply brief. (Defs.' Reply Br. at 1.) As a result, the Court GRANTS the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) with regard to claims (1) and (3) (SAC ¶¶ 78–79 and SAC ¶¶ 81–82, respectively) within the First Claim for Relief of the SAC identified in Part I.B.4 of this Order, *supra.* The Court also GRANTS the Motion to Dismiss pursuant to Rule 12(b)(1) with regard to the Second Claim for Relief of the SAC to the extent it challenges the validity of the EPA Trash TMDLs. (*See* SAC ¶¶ 90, 94, 96–97, 99.)

The Court now addresses the parties' arguments in relation to the remaining claims.

### A. Challenge to EPA's Authority to Approve the State Trash TMDLs

Plaintiffs claim that EPA lacked authority to approve the State Trash TMDLs because it had already established the EPA Trash TMDLs. (SAC ¶¶ 80, 83.) Defendants move to dismiss this claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Mot. to Dismiss at 19–20.) Defendants contend that EPA in fact has a statutory *obligation* under 33 U.S.C. § 1313 to review any proposed TMDLs submitted by a state and either approve them or disapprove them. (*Id.*) Defendants assert that nothing in the CWA or otherwise divests EPA of jurisdiction to approve a state-submitted TMDL once EPA has issued its own TMDLs, and in fact, recognizing such a principle would thwart Congressional intent to vest states with the primary responsibility of implementing the CWA's provisions. (*Id.* at 20.) Plaintiffs counter (in less than straightforward fashion) that by allowing California to submit the State Trash TMDLs to EPA after EPA established the EPA Trash TMDLs, EPA effectively "remanded" a "TMDL submission" to California, and EPA lacked authority to "remand" this submission and subsequently approve California's "resubmission." (*See* Pls.' Opp. Br. at 15–16.) [12]

■ Plaintiffs' counterargument is meritless. No authority supports the conclusion that EPA lacks authority to approve

---

12. Plaintiffs also argue that EPA lacked authority to approve the State Trash TMDLs because these TMDLs cover "unlisted" waters; according to Plaintiffs, EPA has authority only to approve TMDLs for "listed" waters. (*Id.* at 14–15.) As Defendants correctly point out, this argument goes to the merits of EPA's approval of the State Trash TMDLs, not to the issue of whether EPA had any authority to approve any state-submitted TMDLs after issuing its own TMDLs—the issue raised by this claim. (Defs.' Reply Br. at 10 n. 9.) Plaintiffs' argument is relevant only to their own Motion for Partial Summary Judgment, not to the arguments raised in the Motion to Dismiss.

state-submitted TMDLs after EPA has established its own TMDLs, nor does this conclusion logically follow from the proposition that EPA is required to approve or disapprove a state-submitted TMDL within 30 days of submission. Moreover, as Defendants astutely note, recognizing such a principle "would lead to absurd results. Under this scenario, once EPA establishes a TMDL, the State could never update it or modify it based on changed circumstances." (Mot. to Dismiss at 20.) Finally, like Defendants, (*see* Defs.' Reply Br. at 10), the Court is at a loss to understand what Plaintiffs mean by their contention that EPA "remanded" the EPA Trash TMDLs to California for revision and resubmission. Nothing in the allegations of the Complaint remotely suggest any sort of sending back of TMDLs to California for revision or additional development. And even if there were such a "remand," it does not follow that EPA lacked authority to approve the State Trash TMDLs.

For these reasons, the Court GRANTS the Motion to Dismiss with respect to claim (2) within the First Claim for Relief, (SAC ¶¶ 80, 83), *see supra* Part I.B.4. Additionally, it is evident that Plaintiffs cannot amend the SAC to allege facts sufficient to rehabilitate this claim because it is meritless as a matter of law. Accordingly, this claim is DISMISSED WITHOUT LEAVE TO AMEND and WITH PREJUDICE.

### B. *The "De Facto TMDL Procedure"*

Under claim (4) within their First Claim for Relief, *see supra* Part I.B.4, and the Second Claim for Relief, Plaintiffs challenge the *"de facto* TMDL procedure," [13] which they consider to consist of:

the establishment by the [Los Angeles] Regional Board of the TMDL, followed by the preparation and notice of the TMDL by USEPA, followed by the approval of the TMDL by the State Board, followed by the "establishment" by USEPA of the EPA TMDL, followed by the determination by USEPA to review and/or approve the subsequently submitted State TMDL, and to thereafter find the USEPA established TMDL is "superceded" . . . .

(SAC ¶ 85.) Plaintiffs assert that this procedure violates the APA, the RFA, and the SBREFA. (*Id.* ¶¶ 84–85, 96–98.) Plaintiffs allege not only that they have previously suffered from the effectuation of the *de facto* TMDL procedure, but also that they will suffer from the effectuation of the procedure in the future. (*See id.* ¶¶ 84–86.)

Defendants move to dismiss these claims by pointing out that the APA and the RFA, which was amended by the SBREFA, permit challenges *only* to "final agency action." (Mot. to Dismiss at 16–19.) [14] They explain that the APA defines "agency action" to include "the whole or a part of any agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." (*Id.* at 16) (quoting 5 U.S.C. § 551(13).) (They do not indicate whether this definition applies to the RFA and SBREFA as well.) Defendants assert that what Plaintiffs characterize as a *de*

---

**13.** Plaintiffs do not expressly use the phrase *"de facto* TMDL procedure" in the SAC. Instead, they refer to this procedure as the "TMDL Procedure" and contend that EPA has effected a *"de facto* adoption" of the "TMDL Procedure." (SAC ¶ 85.) For ease of reference, the Court will refer to what Plaintiffs call the "TMDL Procedure" as the *"de facto* TMDL procedure."

**14.** Defendants also contend that the RFA, as amended by the SBREFA, provides a narrow and exclusive means of judicial review that is not available here due to the nature of Plaintiffs' challenge to the *de facto* TMDL procedure. (*See id.* at 16.)

*facto* TMDL procedure is not an "agency action," much less a final agency action, but in fact a sequence of events; as such, they maintain, the procedure cannot give rise to a challenge under the APA or under the RFA, as amended by the SBREFA.

Plaintiffs respond to Defendants' arguments somewhat curiously. Despite vehemently asserting that Defendants' arguments are incorrect, they do not dispute that a challenge will lie only to final agency action. Instead, they contend that the *de facto* TMDL procedure "led up to and resulted in 'final agency action,'" (Pls.' Opp. Br. at 22), namely the August 1, 2002, approval of the State Trash TMDLs. Plaintiffs also argue at great length that their challenge to this procedure is not moot because it falls under the "capable of repetition, yet evading review" exception to the mootness doctrine. (*Id.* at 22–25.)

■ Defendants' arguments are persuasive, and Plaintiffs' responses are both uncompelling and nonresponsive. As Defendants correctly note, (*see* Defs.' Reply Br. at 4–5), Plaintiffs' suggestion that they are challenging EPA's approval of the State Trash TMDLs, as opposed to the so-called "TMDL procedure," is belied by the allegations of the SAC: by their plain language, the allegations of paragraphs 84 through 86 and paragraphs 96 through 98 challenge the "TMDL procedure," (SAC 84–86, 96–98); Plaintiffs' challenge to

EPA's approval of the State Trash TMDLs is set out in paragraph 87, (*see id.* ¶ 87), the justiciability of which challenge is discussed in Part III.C of this Order, *infra.* Plaintiffs do not demonstrate how the "procedure" is "the whole or a part of any agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act" or falls within any other definition, statutory or otherwise, of final agency action.[15] Indeed, as Defendants also correctly note, (*see* Defs.' Reply Br. at 4–5), Plaintiffs' assertion that the TMDL procedure *consummated in* final agency action, namely EPA's approval of the State Trash TMDLs, is an implicit admission that the "procedure" itself is not final agency action. Nor do Plaintiffs make any effort to distinguish or refute any of the authorities cited by Defendants in support of their arguments. Finally, as Defendants yet again correctly point out, Plaintiffs' mootness argument is nonresponsive because Defendants do not contend that this claim is moot. (*Id.* at 8.)[16]

In sum, it is apparent that the alleged *de facto* TMDL procedure, consisting of the various events identified in paragraph 85 of the SAC, is not subject to challenge under the APA, RFA, or SBREFA because it is not final agency action within the meaning of those statutes. *Cf. Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 890, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (rejecting challenge to alleged land with-

**15.** Even though the Court has not been able to locate a statutory definition of "agency action" for purposes of the RFA and SBREFA, Plaintiffs have put forward no argument to suggest that it should be given a meaning substantially different than that provided in the APA. The Court sees no reason to conclude that "agency action" should be given a significantly more expansive definition than that provided for purposes of the APA.

**16.** Plaintiffs do not respond to Defendants' argument that judicial review is unavailable under the RFA, as amended by the SBREFA,

for alleged violations of 5 U.S.C. § 603. (Mot. to Dismiss at 18.) The Court agrees with Defendants that the implication of this lack of response is that any opposition to this argument is waived. (*See* Defs.' Reply Br. at 3–4.) The Court disagrees with Defendants, however, that Plaintiffs have failed to respond to Defendants' arguments that the *de facto* TMDL procedure does not constitute "final agency action" under the RFA, as amended by the SBREFA; but the Court finds their response to this argument meritless for the reasons stated above.

drawal review program on grounds that alleged program was not final agency action within meaning of APA). Accordingly, the Court GRANTS Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to claim (4) within the First Claim for Relief, (SAC ¶¶ 84–86). The Court also GRANTS Defendants' motion pursuant to Rule 12(b)(6) with regard to the Second Claim for Relief. Given that the Second Claim for Relief challenges the validity of the EPA Trash TMDLs and the alleged *de facto* TMDL procedure alone, and given that Plaintiffs have withdrawn their challenge to the validity of the EPA Trash TMDLs, the Second Claim for Relief is now dismissed in its entirety.

It is further evident that Plaintiffs cannot amend the SAC to allege facts sufficient to rehabilitate these claims because they are not actionable as a matter of law. Accordingly, both claim (4) within the First Claim for Relief and the Second Claim for Relief are DISMISSED WITHOUT LEAVE TO AMEND and WITH PREJUDICE.

### C. *Ripeness of Plaintiffs' Challenge to EPA's Approval of State Trash TMDLs*

Plaintiffs' remaining claim (aside from the Third Claim for Relief, which is dependent on the First and Second Claims for Relief) challenges the merits of EPA's approval of the State Trash TMDLs. (*See id.* ¶ 87.) Defendants move to dismiss this claim as unripe for judicial review. Specifically, Defendants contend that the issues are not yet sufficiently developed to be fit for judicial review under the APA because Plaintiffs' existing NPDES permit imposes no obligations on Plaintiffs in connection with the State Trash TMDLs and because the Los Angeles Regional Board intends to revisit these TMDLs at the end of the monitoring period. (Mot. to Dismiss at 21–23.) Defendants further contend that

Plaintiffs will not suffer any immediate hardship if review is withheld because EPA's approval of the State Trash TMDLs imposes no present, affirmative duties on Plaintiffs and requires no immediate changes in Plaintiffs' conduct. (*Id.* at 23–24.)

Plaintiffs respond by arguing that they have suffered "injury in fact," both economic and non-economic. (Pls.' Opp. Br. at 16–17.) Citing to the text of the State Trash TMDLs, a copy of which is appended to the Declaration of Richard Montevideo in Support of Plaintiffs' Motion for Summary Adjudication of Issues, and in Opposition to Defendants' Motion to Dismiss (the "Montevideo Declaration") as Exhibit 3, Plaintiffs claim that they are impacted by these TMDLs:

> [B]y the terms of the TMDL itself, most Plaintiffs are directly impacted by its terms and presently have express monitoring obligations to comply with, not to mention pending compliance dates requiring annual reductions in trash. Moreover, the TMDL calls out very specific and expensive implementation measures, including possible implementation through full capture vortex systems totaling $109.3 million for all affected entities within the County [of Los Angeles] by the end of Year 1, and a total of $2,053,100,000 for the first 12 years of implementation. Even the Trash TMDL itself concludes that "Trash abatement in the Los Angeles River system may be expensive."

(Pls.' Opp. Br. at 18 (citing Montevideo Decl., Ex. 3 (State Trash TMDLs)) (internal citations and emphasis omitted).) Similarly, Plaintiffs maintain that "to come into compliance by the Compliance Dates, [they] must begin employing strategies now to meet the progressive reductions in Waste Load Allocations required by the State Trash TMDL[s]." (*Id.* at 19.)

Plaintiffs further allege that the NPDES permit that applies to all of Plaintiffs provides that the State Trash TMDLs are "effective and enforceable." (*Id.* at 18 (citing Montevideo Decl., Ex. 5, at 10 ¶ 14).) Citing paragraph 36 of the SAC, they also contend that they have suffered from the TMDLs' being in effect because they are exposed to "unwarranted enforcement action and third party citizen suits." (*Id.*) Finally, Plaintiffs contend that they have suffered "procedural injuries," to wit, their being "forced to submit comments to two different levels of government (the State of California and the EPA) on two sets of TMDL over a series of many months and several hearings." (*Id.* at 20.)

Defendants dispute all of Plaintiffs' arguments in their reply. Defendants note that "Plaintiffs point to no present effect of the TMDLs on their day-to-day conduct." (Defs.' Reply Br. at 12.) They point out that, contrary to Plaintiffs' contention, Plaintiffs in fact have no monitoring obligations with which to comply because the Los Angeles County Department of Public Works has assumed that responsibility for all of Plaintiffs. (*Id.*) Defendants clarify that the first compliance date under the TMDLs is not until 2006, and the TMDLs identify several potential compliance options without mandating the use of any particular measure. (*Id.*) They further note that Plaintiffs fail to respond to the record evidence that the Los Angeles Regional Board will revisit the TMDLs at the conclusion of the monitoring period, that is, prior to the first compliance deadline, and that such reconsideration has been considered a rational basis for delaying judicial review. (*Id.* at 13 (citing *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 735, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998), and *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1323 (9th Cir.1992)).) Finally, Defendants assail Plaintiffs' reliance on the aforementioned statement in Plaintiffs' NPDES permit because this statement does not establish that the State Trash TMDLs are effective or enforceable against *Plaintiffs*. (*Id.*)

■ The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). Unripe claims are subject to dismissal for lack of subject matter jurisdiction. *See Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 784 n. 9 (9th Cir.2000). In determining whether a case is ripe for review, a court must consider two main issues: "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507 (1967). To address these issues in the context of a challenge to the lawfulness of administrative action, the Supreme Court has identified three factors to consider: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998).

■ In light of these three factors, the Court finds this claim unripe for review. First, delayed review would cause, at most, minimal hardship to the parties. Indeed, Plaintiffs have not demonstrated that they will suffer *any* hardship if review is delayed. Despite their preoccupation with various official pronouncements that the State Trash TMDLs are "effective" and "enforceable," Plaintiffs cannot point to a single future event or condition that is fairly certain to occur and will adversely

impact *Plaintiffs* themselves.[17] That is because the TMDLs do not presently impose any obligations on Plaintiffs and because they are subject to revision before such obligations will be imposed. Nor do Plaintiffs provide any evidence or explanation whatever of the "unwarranted enforcement action and third party citizen suits" to which they claim to be exposed.

Equally unsupported is Plaintiffs' contention that they will bear economic costs in complying with the State Trash TMDLs. The sole evidentiary basis of this allegation, set out in paragraph 35 of the SAC and discussed more thoroughly in Plaintiffs' Opposition, is the estimates provided in the text of the TMDLs themselves. (*See* SAC ¶ 35; Pls.' Opp. Br. at 18.) But this matter is inadmissible hearsay because it is offered by an out-of-court declarant, *i.e.*, the Los Angeles Regional Board, for the truth of the matter stated, *i.e.*, that the TMDLs will in fact impose these costs.[18] Yet even if this evidence were admissible, it would be insufficient to support Plaintiffs' contention that they will suffer economic injury: the cited portions of the State Trash TMDLs provide estimates of costs to be borne by "permittees"; there is no indication that these costs will be borne by *Plaintiffs* in particular. (*See* Montevideo Decl., Ex. 3, at 37, 40, *cited in* Pls.' Opp. Br. at 18.) Similarly, Plaintiffs provide no evidentiary support for the bald contention in their opposition brief that *Plaintiffs* must begin employing "strategies" now to meet the progressive reductions in wasteload allocations required by the State Trash TMDLs. (Pls.' Opp. Br. at 19.)

Even if Plaintiffs will be forced to comply with obligations imposed by the State Trash TMDLs and will suffer costs therefrom, the first Compliance Point is not until Year 3 of the implementation period, which runs from October 1, 2005, to September 30, 2006. (*See* Montevideo Decl., Ex. 3, at 28.) Thus, as a practical matter, Plaintiffs have three years to reach the specified Compliance Point. They have "ample opportunity later to bring [their] legal challenge at a time when harm is more imminent and more certain." *Ohio Forestry Ass'n*, 523 U.S. at 734, 118 S.Ct. 1665. Accordingly, Plaintiffs cannot be heard to complain that they will suffer hardship if review is withheld at the present time.[19]

17. The Court notes parenthetically that Plaintiffs' invocation of "injury in fact" in their opposition brief, (Pls.' Opp. Br. at 16–17), is inapposite. Injury-in-fact is a concept that relates to the issue of standing, not ripeness. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiffs appear to confuse Defendants' arguments as relating to standing, not ripeness. (Pls.' Opp. Br. at 20 ("Federal courts have long recognized procedural injuries, as well as actual injuries, as an alternative basis for standing.").) Nevertheless, the Court construes Plaintiffs' allegations of "injury in fact" as allegations of hardship.

18. The author of the State Trash TMDLs appears to be the Los Angeles Regional Board. (*See* Montevideo Decl., Ex. 3.) Since the Los Angeles Regional Board is an entity created by state law and is subordinate to a state agency, the State Board, the text of the State Trash TMDLs is arguably ascribable to the State Board and the state of California as well.

But these statements cannot be attributed to EPA by virtue of its approval of the State Trash TMDLs. Plaintiffs have laid no legal or evidentiary foundation tending to show that EPA's mere approval of the *TMDLs themselves* implies that EPA further agreed with or endorsed as accurate California's estimates of the costs of compliance provided with those TMDLs.

19. To the extent that Plaintiffs identify past events that are not alleged to recur in the future, such as Plaintiffs' allegedly having to submit comments to two levels of government, for the purpose of demonstrating hardship, those events are irrelevant because Plaintiffs are solely seeking *prospective* relief (aside from attorney's fees and costs of suit).

Second, judicial intervention would likely interfere with further administrative action on the part of the state of California. Plaintiffs have not refuted Defendants' evidence that the Los Angeles Regional Board will be revisiting the State Trash TMDLs at the end of the monitoring period.[20] It is thus possible that the compli-

---

20. Plaintiffs' Objections challenge the admissibility of, *inter alia,* the portion of Defendants' evidence tending to show that the Los Angeles Regional Board will be revisiting the State Trash TMDLs at the end of the monitoring period, namely relevant statements in paragraphs 6 and 12 of the Dickerson Declaration. (The statements in paragraph 7 of the Dickerson Declaration and Exhibit C thereto also constitute such evidence, (*see* Mot. to Dismiss at 22), although Plaintiffs do not object to those statements.)

Plaintiffs challenge the statements in paragraph 6 of the Dickerson Declaration on five grounds. First, Plaintiffs contend that these statements are irrelevant "to the issue in question." (Pls.' Objections at 3.) The Court is unclear about what Plaintiffs mean by "the issue in question," but at any rate, the Court overrules this objection because these statements are indeed relevant to an important issue relating to ripeness: whether the Los Angeles Regional Board will revisit the State Trash TMDLs at the end of the monitoring period. Second, Plaintiffs assert that the statements are inadmissible hearsay because they seek "to introduce statements from parties other than the declarant, into evidence." (*Id.*) This argument fails because the statements are not offered for the truth of the matter stated by persons or parties other than Mr. Dickerson. That the Los Angeles Regional Board's *discussed* (*i.e.,* verbally articulated) the possibility of reopening the TMDLs in the future does not implicate hearsay concerns, *see United States v. Ballis,* 28 F.3d 1399, 1405 (5th Cir.1994); and the board's orders to its staff are more akin to written or verbal acts.

Third, Plaintiffs assail the statements as "incompetent" because "the opinions and views of individual Regional Board members is [*sic*] not relevant or admissible evidence of the actions or positions of the entire Board." (Pls.' Objections at 3 (emphasis omitted).) But nowhere are the "opinions and views" of the individual Regional Board members set out in the statements in paragraph 6. Fourth, Plaintiffs claim that these statements are "not the best evidence of the position of the entire Regional Board, as the views and positions of an entire Board can only be discerned from the meeting minutes and resolutions which confirm the actions of the public body." (*Id.*

(emphasis omitted).) But the "views and positions" of the board are not set out therein. Fifth, Plaintiffs argue that the statements should be excluded as "extra-record evidence." This objection is meritless because the statements are relevant to the ripeness of Plaintiffs' challenge to EPA's approval of the State Trash TMDLs, and the Court may appropriately look beyond the pleadings in evaluating a motion to dismiss pursuant to Rule 12(b)(1).

In sum, Plaintiffs appear to have construed the statements in paragraph 6 of the Dickerson Declaration as stating that the Los Angeles Regional Board intends to *revise* the State Trash TMDLs after completion of the monitoring period, and they have evidently made their objections with this understanding in mind. Careful review of these statements reveals, however, that these statements demonstrate only that board staff have been ordered to report on the TMDLs and make recommendations on whether or not to revise the TMDLs based on the result of the monitoring. Thus, the import of the statements in paragraph 6 is that *the board will be in a position to revisit, and potentially reconsider, the TMDLs at the end of the monitoring period,* not that they have actually decided to revise the TMDLs. Accordingly, and for the reasons stated above, the Court OVERRULES the objections under heading II.1 in Plaintiffs' Objections.

Although Plaintiffs have objected to the admissibility of the statements in paragraph 12 of the Dickerson Declaration, the Court does not rely on those statements in evaluating issues of ripeness. The Court finds that the statements in paragraphs 6 and 7 of the Dickerson Declaration are sufficient to support a conclusion that the Los Angeles Regional Board will be revisiting—which is not to be confused with an intent to revise—the State Trash TMDLs at the end of the monitoring period. Accordingly, the Court OVERRULES AS MOOT the objections under heading II.5 in Plaintiffs' Objections.

Finally, the Court has reviewed the remaining objections in Plaintiffs' Objections. The Court does not rely on any of the matter to which Plaintiffs have objected other than those under headings II.1 and II.2 in evaluating the Motion to Dismiss. Accordingly, the

ance dates or compliance points will be altered or abolished altogether. The State Board may submit new TMDLs to EPA for review and potential approval well before the compliance dates in the State Trash TMDLs. And even if the State Trash TMDLs remain mostly intact, it is certainly possible that the State Board will approve additional regulations that alleviate much of the burden on Plaintiffs. Again, Plaintiffs must bear in mind that it is the state of California, not the federal government, that is charged with implementing the State Trash TMDLs.

Finally, the Court would benefit from further factual development of the issues presented. For example, Plaintiffs allege that in approving the State Trash TMDLs, EPA failed "to use 'best science' and [failed] to carefully consider suggestions on how to structure the TMDL program to be more effective and flexible to ensure workable solutions, with such failure resulting in an inequitable share of the burden [of pollution reduction] being placed on municipalities, such as Plaintiffs herein, to attain water quality standards." (SAC ¶ 47.) Since TMDLs are not self-executing, but require issuance of state regulations for implementation, delaying review will enable the Court to determine more easily and accurately whether the TMDL program could in fact have been structured more flexibly and whether Plaintiffs are bearing an inequitable share of the burden of pollution reduction.

In light of the Court's evaluation of the foregoing three factors, the Court concludes that Plaintiffs' claim is unripe for judicial review. Accordingly, Plaintiffs' claim (5) within the First Claim for Relief, (*id.* ¶ 87), is DISMISSED pursuant to Rule 12(b)(1) due to the Court's lack of subject matter jurisdiction. Since the Court lacks jurisdiction over this claim, it lacks authority to grant Plaintiffs leave to amend the claim; accordingly, the claim is dismissed WITHOUT LEAVE TO AMEND in this action. Finally, because the Court necessarily does not reach the merits of the claim, the dismissal is WITHOUT PREJUDICE.

### D. *Third Claim for Relief*

Plaintiffs' Third Claim for Relief is wholly predicated on their first two claims for relief. Because these two claims for relief are dismissed, the Third Claim for Relief is DISMISSED on the same bases, and to the same extent, as the two claims (and sub-claims thereunder) are dismissed.

### E. *Motion for Partial Summary Judgment*

Plaintiffs' Motion for Partial Summary Judgment seeks summary judgment in Plaintiffs' favor on the issues of (1) whether Defendants had authority and jurisdiction to approve the State Trash TMDLs to the extent that they covered unlisted waters and (2) whether Defendants had authority and jurisdiction to approve the State Trash TMDLs given that they had previously established the EPA Trash TMDLs. For the reasons stated above, the Court grants the Motion to Dismiss. Accordingly, the Motion for Partial Summary Judgment is DENIED AS MOOT. For the same reason, the Court OVERRULES AS MOOT Intervenors' Evidentiary Objections to Declaration of Richard Montevideo in Support of Plaintiffs' Motion for Summary Adjudication of Issues, and in Opposition to Defendants' Motion to Dismiss [21] and Plaintiffs' Objections to

Court OVERRULES AS MOOT the remaining objections in Plaintiffs' Objections.

**21.** Although the Montevideo Declaration relates both to Plaintiffs' opposition to the Motion to Dismiss and to Plaintiffs' Motion for Partial Summary Judgment, Intervenors' objections to the Montevideo Declaration are made in connection with their opposition to the Motion for Partial Summary Judgment.

Declaration of Anjali I. Jaiswal and Exhibits.

## IV. CONCLUSION

Plaintiffs have no reason or right to be before this Court, at least at this time. All of their claims are moot, meritless, or unripe. Plaintiffs' challenges to the EPA Trash TMDLs were quite obviously mooted out the minute that EPA approved the State Trash TMDLs. Indeed, given that Plaintiffs readily withdrew these challenges based solely on Defendants' representations in their moving papers that the EPA Trash TMDLs are void, (Pls.' Opp. Br. at 4 n. 6), the Court wonders why Plaintiffs proceeded to file a lawsuit on this basis. Plaintiffs' challenge to EPA's authority to approve the State Trash TMDLs following its establishment of the EPA Trash TMDLs and their challenge to the "*de facto* TMDL procedure" are so patently meritless that the Court fails to understand why Plaintiffs decided to assert these claims in the first place. Finally, Plaintiffs' challenges to the "merits" of the State Trash TMDLs may very well be valid, but in the absence of any indication that they will suffer imminent hardship, these claims are premature.

The Court does not suggest by any means that Plaintiffs have acted in bad faith by continuing to prosecute this action after EPA approved the State Trash TMDLs. But after receiving Defendants' opening brief for their Motion to Dismiss, Plaintiffs should have recognized that their claims could not be maintained at present, if at all. The arguments in their opposition brief appear to reflect more of a "win at all costs" approach than considered judgment. And while the Court does not doubt that Plaintiffs would appreciate a judicial declaration as to the validity of the State Trash TMDLs, the Court lacks jurisdiction to grant such relief where Plaintiffs

are not in jeopardy of imminent harm and future events could obviate the controversy.

Accordingly,

IT IS HEREBY ORDERED THAT:

1. The Motion to Dismiss Second Amended Complaint [Docket No. 18] is GRANTED, such that:

 a. The First Claim for Relief in the Second Amended Complaint for Injunctive and Declaratory Relief is DISMISSED, as follows:

 i. The claim that EPA acted without authority and acted arbitrarily and capriciously by establishing the EPA Trash TMDLs prior to receiving for review the State Trash TMDLs, (SAC ¶¶ 78–79), is DISMISSED WITHOUT LEAVE TO AMEND and WITH PREJUDICE as moot and, thus, for lack of subject matter jurisdiction;

 ii. The claim that EPA acted without authority and arbitrarily and capriciously by reviewing and approving the State Trash TMDLs because EPA had already established the EPA Trash TMDLs, (SAC ¶¶ 80, 83), is DISMISSED WITHOUT LEAVE TO AMEND and WITH PREJUDICE for failure to state a claim upon which relief can be granted;

 iii. The claim that EPA acted arbitrarily and capriciously and in excess of its jurisdiction with regard to the manner by which it established the EPA Trash TMDLs, (SAC ¶¶ 81–82), is DISMISSED WITHOUT LEAVE TO AMEND and

Accordingly, the Court considers their objections solely for that purpose.

WITH PREJUDICE as moot and, thus, for lack of subject matter jurisdiction;

iv. The claim that the collective actions of California and EPA relating to issuance of the EPA Trash TMDLs and subsequent approval of the State Trash TMDLs constitute a *"de facto* TMDL procedure" that is arbitrary, capricious, and contrary to law, (SAC ¶¶ 84–86), is DISMISSED WITHOUT LEAVE TO AMEND and WITH PREJUDICE for failure to state a claim upon which relief can be granted;

v. The claim that EPA acted arbitrarily and capriciously by approving the State Trash TMDLs because those TMDLs were "patently defective" and established not in accordance with the procedures of the CWA and California law, (SAC ¶ 87), is DISMISSED WITHOUT LEAVE TO AMEND in this action and WITHOUT PREJUDICE as unripe and, thus, for lack of subject matter jurisdiction;

b. The Second Claim for Relief in the Second Amended Complaint for Injunctive and Declaratory Relief is DISMISSED, as follows:

i. To the extent the Second Claim for Relief challenges the validity of the EPA Trash TMDLs, the claim is DISMISSED WITHOUT LEAVE TO AMEND and WITH PREJUDICE as moot and, thus, for lack of subject matter jurisdiction;

ii. To the extent the Second Claim for Relief challenges the validity of the alleged *de facto* TMDL procedure, the claim is DIS-MISSED WITHOUT LEAVE TO AMEND and WITH PREJUDICE for failure to state a claim upon which relief can be granted;

c. The Third Claim for Relief in the Second Amended Complaint for Injunctive and Declaratory Relief is DISMISSED on the same bases, and to the same extent, as the First and Second Claims for Relief are dismissed, given that the Third Claim for Relief is derivative of the first two claims.

2. Plaintiffs' Motion for Summary Adjudication of Issues [Docket No. 28] is DENIED AS MOOT.

3. Plaintiffs' Objections to Declarations of David W. Smith and Dennis Dickerson Offered by Defendants in Support of Defendants' Motion to Dismiss Second Amended Complaint [Docket No. 31] are OVERRULED on the merits with respect to the objections under headings II.1 and II.2 therein and OVERRULED AS MOOT with respect to all remaining objections.

4. Intervenors' Evidentiary Objections to Declaration of Richard Montevideo in Support of Plaintiffs' Motion for Summary Adjudication of Issues, and in Opposition to Defendants' Motion to Dismiss [Docket No. 43] are OVERRULED AS MOOT.

5. Plaintiffs' Objections to Declaration of Anjali I. Jaiswal and Exhibits [Docket No. 47] are OVERRULED AS MOOT.

IT IS FURTHER ORDERED THAT this action is DISMISSED in its entirety. The Clerk shall enter judgment in favor of defendants accordingly. All deadlines and events presently calendared are VACAT-

ED. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.