RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0073p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

LUCAS COUNTY BOARD OF COMMISSIONERS; CITY OF
TOLEDO, OHIO; ENVIRONMENTAL LAW & POLICY
CENTER,

               *Plaintiffs-Appellees*,


LAKE ERIE WATERKEEPER; WATERKEEPER ALLIANCE,
INC.; FOOD & WATER WATCH,

          *Intervenor Plaintiffs-Appellees*,



    *v.*



UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY; LEE M. ZELDIN, in his official capacity as
Administrator, United States Environmental
Protection Agency; ANNE VOGEL, in her official
capacity as Region 5 Administrator, United States
Environmental Protection Agency,

              *Defendants-Appellees*,


OHIO ENVIRONMENTAL PROTECTION AGENCY,

          *Intervenor Defendant-Appellee*,


MAUMEE COALITION II ASSOCIATION (25-3609),

        *Proposed Intervenor Defendant-Appellant*,


OHIO PORK COUNCIL, et al. (25-3662),

        *Proposed Intervenors Defendants-Appellants.*

> Nos. 25-3609/3662

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:24-cv-00779—Jeffrey James Helmick, District Judge.

Decided and Filed:  March 9, 2026

Before:  MOORE, GIBBONS, and BLOOMEKATZ, Circuit Judges.

---

**COUNSEL**

---

**ON BRIEF:**   Stephen P. Samuels, Stephen N. Haughey, Christina Wieg, FROST BROWN TODD LLP, Columbus, Ohio, for Appellant Maumee Coalition in 25-3609.  Daniel W. Wolff, David Y. Chung, CROWELL & MORING LLP, Washington, D.C., for Agricultural Association Appellants in 25-3662. Fritz Byers, FRITZ BYERS, Toledo, Ohio, Dale R. Emch, Tammy G. Lavalette, CITY OF TOLEDO, Howard A. Learner, Robert Michaels, Kathleen Garvey, ENVIRONMENTAL LAW & POLICY CENTER, Chicago, Illinois, for Plaintiffs-Appellees. Nathan A. Hunter, HUNTER & HUNTER LLC, Columbus, Ohio, Tarah Heinzen, Emily Miller, FOOD & WATER WATCH, Washington, D.C., Kelly Hunter Foster, WATERKEEPER ALLIANCE, INC., New York, New York, for Intervenor Plaintiffs-Appellees.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  The Maumee River winds its way through Northwestern Ohio, passing through farmland and, eventually, Toledo, before emptying into Lake Erie.  In recent years, high levels of phosphorus in the Maumee and connected waterways have led to harmful algal blooms in Lake Erie during the summer and fall.  In 2023, following earlier litigation and in accordance with the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, the Ohio Environmental Protection Agency ("Ohio EPA") proposed a Total Maximum Daily Load ("TMDL") for phosphorus in the Maumee and connected waterways, which the United States Environmental Protection Agency ("U.S. EPA") approved.   Plaintiffs, believing the approved TMDL insufficient to address their concerns, sued U.S. EPA under the Administrative Procedure Act ("APA"), claiming that the approval was arbitrary and capricious and contrary to law.

The merits of the Maumee TMDL and Plaintiffs' APA challenge are not before us today. The Appellants in these cases are an assortment of agricultural industry groups ("Associations") and the Maumee Coalition II Association ("Coalition"), each of which supports upholding the TMDL and seeks to intervene as defendants alongside U.S. EPA and Ohio EPA.[1]   The district

---

[1]The Coalition is the appellant in Case No. 25-3609, and the Associations are the appellants in Case No. 25-3662.  We refer to the Coalition's opening brief in its case as "Coal. Br." and the Associations' opening brief as

court denied their motions to intervene, finding that neither had met the criteria for intervention of right, and that the relevant factors weighed against permissive intervention. We affirm the district court's denial of the Coalition's motion to intervene. But because the district court erred in denying the Associations' motion to intervene of right, we reverse in part and remand for further proceedings on the merits.

## I. BACKGROUND

"The Clean Water Act anticipates a partnership between the States and the Federal Government, animated by a shared objective: 'to restore and maintain the chemical, physical, and biological integrity of the Nation's waters.'" *Arkansas v. Oklahoma*, 503 U.S. 91, 101 (1992) (quoting 33 U.S.C. § 1251(a)). As one component of this partnership, each state must identify impaired waters, which are "those waters within its boundaries for which" required effluent limitations "are not stringent enough to implement any water quality standard applicable to such waters." 33 U.S.C. § 1313(d)(1)(A). For each such identification, the state "shall establish . . . the total maximum daily load" for certain pollutants "at a level necessary to implement the applicable water quality standards with seasonal variations and a margin of safety which takes into account any lack of knowledge concerning the relationship between effluent limitations and water quality." *Id.* § 1313(d)(1)(C). Upon establishing a TMDL, the state submits it to U.S. EPA, which may then "approve or disapprove" it. *Id.* § 1313(d)(2). If U.S. EPA disapproves the state's TMDL, it must "establish such loads for such waters as [it] determines necessary," and the state must incorporate these loads into its plan implementing the CWA. *Id.*

U.S. EPA regulations impose various requirements that a TMDL must meet to obtain approval. They define a TMDL as the sum of "wasteload allocations," which are pollutant loads that come from point sources, and "load allocations," which allocate pollutant loads to nonpoint sources. 40 C.F.R. § 130.2(g)–(i). The regulations also contemplate that in the event that "[m]ethods, measures or practices selected by an agency to meet its nonpoint source control

---

"Ass'ns Br." Appellees each filed a single brief containing their arguments in both cases, to which we refer respectively as "Pls. Br." and "Waterkeeper Intervenors Br."

needs" allow for more permissive load allocations to point sources, "then wasteload allocations" for those point sources "can be made less stringent." *Id.* § 130.2(m), (i). U.S. EPA guidance documents also inform the agency's approval of state TMDLs. *See* U.S. EPA, *Guidance for Water Quality-based Decisions: The TMDL Process* (Apr. 1991), https://nepis.epa.gov/Exe/ZyPDF.cgi/00001KIO.PDF?Dockey=00001KIO.PDF. In addition to these federal authorities, Ohio regulations guide Ohio EPA's hand in crafting TMDLs, requiring that they include an "implementation plan establishing specific actions, schedules and monitoring proposed to effectuate a TMDL." Ohio Admin. Code 3745-2-12(A)(2)(a)(iv)(f).

This case has its roots in a 2017 suit "challenging [U.S. EPA's] approval of Ohio EPA's 2016 impaired waters list." *Env't L. & Pol'y Ctr. v. U.S. EPA*, 415 F. Supp. 3d 775, 781 (N.D. Ohio 2019). In that action, the plaintiffs—led by the Environmental Law and Policy Center ("ELPC"), one of the plaintiffs here—argued that Ohio had failed to analyze information pertaining to harmful algal blooms in Lake Erie's western basin. *Id.* Before summary judgment briefing, U.S. EPA withdrew its approval of Ohio's 2016 list, effectively ending that initial lawsuit. *Id.* After further agency proceedings, Ohio EPA submitted an amended impaired waters list declaring Lake Erie's waters impaired, but it refused to propose a TMDL for phosphorus runoff, determining that Western Lake Erie was low priority for development of a TMDL. *Id.* at 780–81. ELPC sued again in 2019, aiming to require U.S. EPA to take action to approve or disapprove Ohio EPA's "constructive submission of no TMDL." *Id.* at 789. The district court denied U.S. EPA's motion to dismiss that 2019 claim. *Id.* at 793–94. The parties then engaged in mediation wherein Ohio EPA agreed to develop a TMDL that U.S. EPA would approve or disapprove within 90 days. R. 1 (Compl. ¶ 132) (Page ID #26). Ohio EPA submitted its TMDL for Western Lake Erie, the "Maumee TMDL," to U.S. EPA on June 30, 2023. *Id.* ¶ 189 (Page ID #36). Unsatisfied with the Maumee TMDL, Plaintiffs (Lucas County, the City of Toledo, and ELPC) "met with U.S. EPA officials and staff to urge them to disapprove" it. *Id.* ¶ 190 (Page ID #36). U.S. EPA, unswayed by the objections, approved the TMDL on September 28, 2023. *Id.* ¶ 191 (Page ID #37).

Plaintiffs then filed this action in federal district court, alleging that U.S. EPA's approval of the Maumee TMDL violated the APA as "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." *Id.* ¶¶ 193–97 (Page ID #37–38). Plaintiffs' APA claim includes five subparts. *Id.* ¶ 196(a)–(e) (Page ID #38). Two allege that the Maumee TMDL falls short of statutory requirements in 33 U.S.C. § 1313(d)(1)(C), two allege violations of U.S. EPA's CWA regulations, and one asserts that the Maumee TMDL contravenes both Ohio regulations and EPA guidance. *Id.*

Four motions to intervene were filed. A group of environmental organizations led by Lake Erie Waterkeeper ("Waterkeeper Intervenors") moved to intervene as plaintiffs, noting that their members had economic concerns relating to the reduction of phosphorus pollution and that they planned to set forth different arguments than Plaintiffs for why the Maumee TMDL should be set aside. R. 46 (Waterkeeper Mot. at 12–13) (Page ID #1849–50). Ohio EPA moved to intervene as a defendant on the basis that it "prepared the TMDL at issue and is also responsible for implementing the TMDL." R. 33 (Ohio EPA Mot. at 1) (Page ID #798). The Associations and the Coalition also moved to intervene as defendants. R. 19 (Ass'ns Mot.) (Page ID #205–08); R. 38 (Coal. Mot. at 1–2) (Page ID #1503–04). U.S. EPA and Plaintiffs both opposed the Associations' and the Coalition's motions with respect to intervention of right, and Plaintiffs also opposed permissive intervention. R. 32 (U.S. EPA Resp. to Ass'ns Mot.) (Page ID #796–97); R. 34 (Pls.' Opp. to Ass'ns Mot.) (Page ID #878–88); R. 38 (Coal. Mot. at 1) (Page ID #1503) ("U.S. EPA has indicated that it opposes the Coalition's request to intervene as a matter of right, but takes no position as to permissive intervention."); R. 44 (Pls. Opp. to Coal. Mot.) (Page ID #1819–29).

The district court held a status conference in December 2024, during which it granted Ohio EPA's motion to intervene and requested supplemental briefing from the other proposed intervenors should they still wish to participate as parties rather than as amici curiae. Minute Order, Case No. 3:24-cv-779 (N.D. Ohio Dec. 16, 2024). The Associations and Coalition each filed supplemental briefs in support of intervention. R. 55 (Coal. Supp. Br.) (Page ID #1957–73); R. 56 (Ass'ns Supp. Br.) (Page ID #1974–82).

The district court resolved the pending motions to intervene in a July 2025 memorandum opinion.  R. 68 (Mem. Op.) (Page ID #2074–86).[2]  It granted the Waterkeeper Intervenors' motion to intervene of right, finding they had "point[ed] to several alleged bases for vacating the Maumee TMDL based upon the administrative record that are not raised by Plaintiffs."  *Id.* at 11–12 (Page ID #2084–85).  At the same time, it denied the Associations' and Coalition's motions.  Insofar as each sought to intervene of right, the district court found that neither had shown that the existing defendants would not adequately represent their interests.  *Id.* at 5–10 (Page ID #2078–83).  It held that because U.S. EPA "share[d] the same ultimate objective" as the Associations and the Coalition, it was "presumed to provide adequate representation for the[ir] interests."  *Id.* at 5 (Page ID #2078) (quoting *United States v. Michigan*, 424 F.3d 438, 443–44 (6th Cir. 2005)).  The court further found that neither the Associations nor the Coalition managed to rebut that presumption of adequate representation.  *Id.* at 8–10 & n.2 (Page ID #2081–83).

Having denied both the Associations and the Coalition intervention of right, the district court proceeded to address whether permissive intervention was warranted.  *Id.* at 11 (Page ID #2084).  Referencing its findings as to intervention of right, the district court found that the proposed intervenors' arguments were largely not relevant to the case and that "[i]ncluding those arguments in the litigation now would be premature and 'unnecessarily complicate this case and delay the proceedings.'"  *Id.* (quoting *Ohio v. U.S. EPA*, 313 F.R.D. 65, 71–72 (S.D. Ohio 2016)).  It therefore denied permissive intervention as well.  *Id.*  Both the Associations and the Coalition appealed.  R. 73 (Coal. Notice of Appeal) (Page ID #2148–49); R. 74 (Ass'ns Notice of Appeal) (Page ID #2150–51).  We have jurisdiction to review the district court's denial of the Associations' and Coalition's motions to intervene, which are immediately appealable collateral orders.  *Purnell v. City of Akron*, 925 F.2d 941, 945 (6th Cir. 1991).

---

[2]Although supplemental briefing was completed in February 2025, the case was reassigned to a new district judge shortly thereafter.  *See* Minute Order, Case No. 3:24-cv-779 (N.D. Ohio Feb. 18, 2025).

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 24 governs intervention by non-parties to an action in federal court. Rule 24(a), titled "Intervention of Right," states that a "court must permit anyone to intervene who" meets the Rule's criteria. Because a district court has no leeway to deny intervention of right when these criteria are met, we review de novo its findings under Rule 24(a). *See Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula* ("*WOMP*"), 41 F.4th 767, 771 (6th Cir. 2022) (reviewing de novo all elements for intervention of right (except for timeliness)). Rule 24(b), by contrast, is titled "Permissive Intervention" and provides that "the court may permit anyone to intervene" after weighing, inter alia, "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." We will reverse a district court's denial of permissive intervention "only for clear abuse of discretion . . . ." *Michigan*, 424 F.3d at 445 (quoting *Purnell*, 925 F.2d at 951).

### B. Intervention of Right

"Under Federal Rule of Civil Procedure 24(a)(2), district courts must permit anyone to intervene who, (1) in a timely motion, shows that (2) they have a substantial legal interest in the case, (3) their absence from the case would impair that interest, and (4) their interest is inadequately represented by the parties." *WOMP*, 41 F.4th at 771. This appeal involves only the fourth element, which the district court found was dispositive.

The burden that proposed intervenors bear in demonstrating that the existing parties do not adequately represent their interests "has been described as minimal because it need only be shown 'that there is a *potential* for inadequate representation.'" *Michigan*, 424 F.3d at 443 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999)) (emphasis in original); *see also Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."). "[A]pplicants for intervention" in this Circuit, however, must nevertheless "overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit."

*Michigan*, 424 F.3d at 443–44; *see also Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).  To do so "it may be enough to show that the existing party . . . will not make all of the prospective intervenor's arguments," *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997), to demonstrate "collusion . . . between the existing party and the opposition," or to show that the existing party has "interests adverse to the interven[o]r," *Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000).

### 1.  Presumption of Adequate Representation

The Associations and the Coalition levy two attacks against the district court's application of the presumption of adequate representation in this case.  The Associations begin with a full-frontal attack on the presumption itself, arguing that it cannot be squared with Supreme Court precedent.  Ass'ns Br. at 25–27.  We find no such incompatibility between our own and the Supreme Court's cases.

The Associations begin with *Trbovich*, which they argue "did not require the [proposed intervenor] union member to rebut a presumption of adequate representation" in spite of its finding that "'the Secretary of Labor in effect bec[ame] the union member's lawyer.'" *Id.* at 25–26 (quoting *Trbovich*, 404 U.S. at 539).  To be sure, *Trbovich* did not use the word "presumption" or expressly apply one.  But the decision's facts and logic do not run contrary to a presumption of adequate representation.  Just as our application of the presumption focuses on the parties' "ultimate objective," *Michigan*, 424 F.3d at 444, the *Trbovich* court recognized that both the intervenor and party shared the same goal:  setting aside an allegedly tainted union election, 404 U.S. at 529–30.  Despite this shared goal, the Supreme Court held that because the Secretary of Labor's role and interests "may not always dictate precisely the same approach to the conduct of the litigation" as the proposed intervenor's, there was "sufficient doubt about the adequacy of representation to warrant intervention." *Id.* at 538–39.  This is entirely consistent with our application of the presumption, which recognizes that a movant who seeks the same litigation outcome as an existing party may nevertheless be inadequately represented if it can demonstrate the parties are "animated by different, and possibly conflicting, concerns." *WOMP*, 41 F.4th at 774.

The Associations' invocation of *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022), fares no better. There, the Court held that "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Id.* at 197. Here however, no proposed intervenor (save Ohio EPA, which was permitted to intervene) is a state governmental agent, nor are Plaintiffs challenging a state law. Moreover, far from *sub silentio* overruling the full sweep of caselaw addressing a presumption of adequate representation, the Court expressly declined to "decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance." *Id.* Until the Supreme Court does weigh in on that question, we must continue to follow our own binding intervention caselaw.

Both the Associations and the Coalition next advance the narrower argument that, absent our wholesale abandonment of the presumption of adequate representation, the presumption does not apply to them. Ass'ns Br. at 23–25; Coal. Br. at 14–17. The Associations claim the presumption does not apply because U.S. EPA "has an interest in ensuring the smooth administration of the Clean Water Act, and it will defend its approval of the Maumee TMDL as being consistent with its prior interpretations of 33 U.S. § 1313," with which the Associations disagree. Ass'ns Br. at 24. The Coalition argues that its general interest in less stringent phosphorus limits diverges from U.S. EPA's goals, noting "recent disputes between U.S. EPA and Ohio EPA over the stringency of total phosphorus limits in permits issued by the latter" to two Ohio municipalities. Coal. Br. at 15.

These arguments fail because they misunderstand the level of generality at which we determine the proposed intervenor's and the existing party's ultimate objective. Time and again, in considering whether the presumption of adequate representation applies, we have looked to the parties' objective within the scope of the relevant litigation, not their overarching goals or interests. *Bradley*, 828 F.2d at 1193 (holding that "the present class representatives and proposed intervenors share the same ultimate objective in a unitary school district"); *Michigan*, 424 F.3d at 444 (applying presumption where the declaratory relief sought by existing party and intervenor was "nearly identical"); *WOMP*, 41 F.4th at 774 (applying presumption where both

party and intervenor sought to defend ordinance against constitutional challenge); *see Jansen v. City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1990) (noting that intervenors and defendant shared ultimate objective of defending hiring practices). This case is no different. U.S. EPA and the proposed intervenors share the same litigation objective of defending federal approval of the Maumee TMDL. The proposed intervenors' arguments, rather than addressing reasons that the presumption would not apply under these precedents, address factors that may rebut the presumption. *See WOMP*, 41 F.4th at 774 (presumption rebutted by intervenor's "different, and possibly conflicting, concerns"); *Jansen*, 904 F.2d at 343 (presumption rebutted by intervenors' "distinct" interest and divergent arguments). We therefore agree with the district court that the presumption of adequate representation applies to both the Coalition's and the Associations' motions to intervene.

## 2. Rebuttal of the Presumption of Adequate Representation

This leads naturally to the next question: Given that the presumption of adequate representation applies, have the Associations or the Coalition rebutted it? We begin by addressing the Associations' argument that their ability to raise specific statutory arguments adverse to U.S. EPA's position rebuts the presumption.

The Associations intend to argue that certain of "Plaintiffs' alleged defects in the Maumee TMDL," which Plaintiffs measure against EPA regulations and guidance, "are not required elements of a TMDL under the 'single, best meaning' of the Clean Water Act." Ass'ns Br. at 20 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024)). Put differently, U.S. EPA is likely to argue that the Maumee TMDL *does* meet these "required elements." The Associations, by contrast, intend to argue that the issue of whether these elements are met is beside the point because they are not necessary for the approval of a TMDL "in accordance with law[.]" 5 U.S.C. § 706(2)(A). Because the district court will not, with the present parties, consider these arguments, the Associations claim to have rebutted the presumption of adequate representation. In response, Plaintiffs argue first that we need not consider this issue because the Associations waived it below, and second, that even if we do, the Associations' proposed line of argument falls outside the scope of this litigation.

We begin with Plaintiffs' allegation of waiver, Pls. Resp. Br. at 19–20, and hold that we may consider the issue of whether the Associations have rebutted the presumption. At the outset, we clarify that because "[n]owhere in [their] briefs or the proceedings below did [the Associations] affirmatively abandon" this line of argument, the proper inquiry is whether they *forfeited* (as opposed to waived) it. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).[3] "[T]o avoid forfeiture," we "require[] timely and reasoned presentation of non-jurisdictional issues" to the district court. *Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528 (6th Cir. 2014) (quoting *Dice Corp. v. Bold Techs.*, 556 F. App'x 378, 384 (6th Cir. 2014)). This rule is animated by the dual goals of "eas[ing] appellate review by having the district court first consider the issue" and "ensur[ing] fairness to litigants by preventing surprise issues from appearing on appeal." *Id.* (quoting *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009)).

To be sure, the Associations did not lay out the details of their proposed line of argument in their original motion to intervene, although they did argue at a higher level of generality that "U.S. EPA cannot adequately represent its public interest in implementing the CWA while also representing the Agricultural Associations' private interest against unreasonable or unjustified permitting and land management requirements." R. 19-1 (Ass'ns Mem. in Support of Mot. at 11) (Page ID #219). This is in part explained by the fact that then, as now, the Associations did not view this case as involving a presumption of adequate representation. Plaintiffs' opposition to intervention argued that the presumption did apply, and that the Associations had failed to rebut it because they "ha[d] not identified any separate arguments unique to them that they would like to make." R. 34 (Opp. to Ass'ns Mot. at 7) (quoting *Sierra Club v. U.S. EPA*, No. 21-3057, 2022 U.S. App. LEXIS 577, at *4 (6th Cir. Jan. 7, 2022)). The Associations replied by identifying such an argument and laying out how their "approach to defending EPA's action [was] all but certain to 'differ markedly' from EPA's defense." R. 40 (Ass'ns Reply at 9) (Page ID #1587).

---

[3]As the Supreme Court has recognized, "[t]he terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017). We have in recent years exercised increased care in distinguishing between the two. *Cockrun v. Berrien County*, 101 F.4th 416, 418 n.1 (6th Cir. 2024).

We doubt that the Associations would have forfeited this argument even if briefing concluded at that point.  The subsequent district-court proceedings, however, further undermine any claim of forfeiture.  After the district court ordered supplemental briefing, the Associations reiterated their claim to "have also identified distinct arguments they would advance that differ from those that EPA is likely to raise." R. 56 (Ass'ns Supp. Br. at 3) (Page ID #1976).  Plaintiffs then had an opportunity to respond, and they did respond to the Associations' argument, albeit obliquely.  Rather than grapple with the Associations' distinct arguments on their own terms, Plaintiffs simply insisted that the Associations could "make whatever arguments they want in an *amicus* brief." R. 58 (Pls. Supp. Br. at 2) (Page ID #1991).  The district court then addressed the Associations' argument in its opinion, albeit in a footnote.  R. 68 (Mem. Op. at 9 n.2) (Page ID #2082).

The Associations' litigation of this issue below runs afoul of neither our forfeiture rule nor its underlying principles.  Although they did not outline their divergent argument at the first possible instance, they did so in a "timely and reasoned" reply to Plaintiffs' arguments in opposition.  *Cooley L. Sch.*, 759 F.3d at 528 (quoting *Dice Corp.*, 556 F. App'x at 384).  Nor were Plaintiffs deprived of an opportunity to respond, given the supplemental briefing in the case.  Finally, the district court could (and did) consider the issue.  It should hardly surprise Plaintiffs that the Association has chosen to address the argument once again on appeal.  *See id.* We accordingly reject any assignment of forfeiture or waiver and consider whether the Associations' proposed arguments successfully rebut the presumption of adequate representation.

Our prior cases addressing the presumption of adequate representation provide a helpful rubric for considering the Associations' argument.  In *Jansen*, White firefighter applicants sued the City of Cincinnati, alleging that its fire department's use of hiring practices, implemented in the wake of a 1974 consent decree, unjustly disadvantaged them in violation of both the Constitution and the consent decree itself.  904 F.2d at 338–39.  The city disagreed and defended the complained-of practices.  *Id.* at 339.  The proposed intervenors, a class of Black fire-department applicants and employees, sought to enter the litigation and defend the challenged practices alongside the city.  *Id.* They planned to advance the argument that the challenged practices were necessary to offset the test that the city was using to evaluate applicants, which

the intervenors believed was unauthorized by the consent decree and had a disparate impact on Black applicants. *Id.* at 343. The city, on the other hand, did not view its test as violating the consent decree. *Id.* We held that although the city and proposed intervenors sought the same ultimate outcome in the suit, this "conflict of interest" and their divergent arguments in support of that outcome overcame the presumption of adequate representation. *Id.* at 343–44.

*Grutter* and *Michigan State AFL-CIO* each charted a similar course. In *Grutter*, the proposed intervenors demonstrated "a *potential* for inadequate representation" by "present[ing] legitimate and reasonable concerns about whether the University [would] present particular defenses of the contested race-conscious admissions policies." 188 F.3d at 400–01 (emphasis in original). Because the intervenors "ha[d] articulated specific relevant defenses that the University [might] not present," they had "established the possibility of inadequate representation" and were granted intervention of right. *Id.* at 401. And in *Michigan State AFL-CIO*, we allowed the state Chamber of Commerce intervention of right on the ground that "[o]ne would expect that the Chamber, as a target of the statutes' regulations, would harbor an approach and reasoning for upholding the statutes that will differ markedly from those of the state . . . ." 103 F.3d at 1247.

By contrast, in *United States v. Michigan*, we encountered a different set of facts, and reached the opposite conclusion. There, the state sought "a declaration that . . . the [Ottawa and Chippewa] Tribes' treaty-reserved rights to hunt and fish outside the Great Lakes have ceased to exist." 424 F.3d at 444. The proposed intervenors—property owners who, like the state, sought to limit the relevant treaty rights—moved to intervene, arguing that the state "ha[d] no duty to defend their interests." *Id.* To determine whether they had overcome the presumption of adequate representation, we focused on "[t]he scope of the issues in the current phase of [the] litigation," which involved only declaratory relief, and held that "[t]he proposed intervenors [had] failed to articulate why the State of Michigan's legal representation concerning this issue [was] inadequate." *Id.* This was because, among other things, "[t]he proposed intervenors ha[d] not identified any separate arguments unique to them that they would like to make concerning the existence of the Tribes' inland rights, nor ha[d] they shown that the State of Michigan would fail to present such arguments to the district court." *Id.*

Taken together, these cases stand for the principle that a proposed intervenor can rebut the presumption of adequate representation via reference to a particular argument or arguments, if it shows at least (1) that it possesses specific arguments within the scope of the case that it intends to make, and (2) that the existing party or parties may not or will not make those arguments because of a conflict of interest.

With this principle in mind, we hold that the Associations have overcome the presumption of adequate representation because they plan to raise relevant arguments that conflict with U.S. EPA's interests. Whereas U.S. EPA appears intent on arguing that its approval of the Maumee TMDL is consistent with its regulations interpreting and implementing the CWA, the Associations plan to argue that certain of the requirements that those regulations impose are inconsistent with or not required by the CWA, and therefore need not be met at all. *See* Ass'ns Br. at 19–23. Put differently, U.S. EPA and the Associations disagree regarding the criteria that a state's proposed TMDL must meet for U.S. EPA's approval thereof to be in accordance with law. Their disagreement on this front renders the Associations' situation very much like that of the proposed intervenors in *Jansen*. Like the intervenors there, the Associations' arguments, if correct, would provide a reason to find that U.S. EPA's approval of the Maumee TMDL did not contravene the CWA. And like the city in *Jansen*, which would not have argued that its own evaluations ran afoul of the consent decree, U.S. EPA is unlikely to argue that its own regulations are contrary to law.[4] This conflict of interest is sufficient to overcome the presumption that the existing parties will adequately represent the Associations' interest in this matter. *See Jansen*, 904 F.2d at 343–44.

In opposing intervention of right, Plaintiffs argue that "The Agricultural Associations cannot make any arguments beyond those available to Defendants, let alone introduce any evidence outside of the administrative record, and U.S. EPA opposed, rather than supported,

---

[4]Neither the parties' briefing nor the decision below addresses the possibility that Ohio EPA, which has been permitted to intervene as a defendant, might raise these arguments. We see, however, no indication in the record that Ohio EPA disagrees with U.S. EPA's interpretation of the CWA, seeks a diminishment of its own authority, or would otherwise raise the Associations' arguments. There remains, therefore, at least "a *potential* for inadequate representation." *Grutter*, 188 F.3d at 400 (emphasis in original).

intervention as of right." Pls. Br. at 24.**5** The Waterkeeper Intervenors chart a similar course, arguing in more detail that the Associations' proposed reasoning is off-limits because "[t]he District Court can uphold U.S. EPA's action approving the TMDL 'if at all, on the basis articulated by the agency itself.'" Waterkeeper Intervenors Br. at 28 (quoting *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)). It is, of course, well established that in determining whether an agency action was arbitrary or capricious, courts may not look to evidence outside the administrative record. Neither the agency nor any other party may defend the agency's action based on "*post hoc* rationalizations" that are "nowhere to be found" in the underlying record. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22 (2020) (emphasis in original). But that is not what we understand the Associations' arguments to entail. Rather, they intend to argue that U.S. EPA's reasons for approving the Maumee TMDL are adequate to support its decision, but that the legal threshold for a valid approval is lower than Plaintiffs (or U.S. EPA itself) contend. And all parties appear to agree that the district court, in interpreting the CWA, is not bound by U.S. EPA's view as expressed in its TMDL approval. *See* Waterkeeper Intervenors Br. at 29 (citing *Loper Bright*, 603 U.S. at 412); Ass'ns Br. at 19 (same).**6** Because the Associations, "as a target of the [CWA's] regulations, . . . harbor an approach and reasoning for upholding the [Maumee TMDL] that . . . differ[s] markedly from" U.S. EPA's, intervention of right is warranted. *Mich. State AFL-CIO*, 103 F.3d at 1247.

The Coalition, whose membership includes local governments and businesses with discharge permits for phosphorus, has failed to show that the existing parties will not adequately

---

**5**The mere fact that U.S. EPA opposes intervention of right is, in and of itself, irrelevant to our determination.

**6**In the course of this argument, the Waterkeeper Intervenors characterize the Associations' "true agenda [a]s transforming this narrow case about the legality of a particular TMDL . . . into an opportunity to relitigate arguments for weakening or eliminating U.S. EPA's broadly applicable TMDL requirements." Waterkeeper Intervenors Br. at 31. To begin, the Associations' opportunity to litigate their arguments is confined insofar as the arguments must have some bearing on the claims in this case. Moreover, the fact that an intervenor is motivated by an "agenda" that differs from that of the existing parties has never been a reason *not to grant* intervention of right. Much to the contrary, a conflicting agenda or overarching interest has often motivated decisions *granting* intervention. *See, e.g.*, *Berger*, 597 U.S. at 198 (noting proposed intervenors "different perspective"); *Jansen*, 904 F.2d at 343 (noting proposed intervenors' "differences in interests" in the city's "present and future employment and promotion" policies); *WOMP*, 41 F.4th at 774 (noting that proposed intervenors and party were "animated by different, and possibly conflicting, concerns").

represent its members' interest in maintaining those existing permits under the prevailing Maumee TMDL. It first attempts to rebut the presumption of adequate representation by noting that "the interests of U.S. EPA and the Coalition may diverge" because its members hold phosphorus discharge permits from Ohio EPA, which has had "recent disputes" with U.S. EPA over certain discharge permits allocated to local governments in the region. Coal. Br. at 15. But it has not demonstrated how these disputes, which involve matters ancillary to the APA claims here, could result in divergent arguments or strategies regarding "the scope of the issues in . . . this litigation." *Michigan*, 424 F.3d at 444. Even assuming that these disputes did demonstrate a conflict of interest, however, the Coalition fails to show that Ohio EPA, which was the party on the other side of those disputes and is now a defendant in this action, will not adequately represent its interest in upholding the Maumee TMDL and the discharge permits issued thereunder.

The Coalition next points to several proposed defenses to Plaintiffs' claim, which, unlike the Associations' divergent arguments, fail to rebut the presumption of adequate representation. These "additional defenses," which are listed in its proposed answer and outlined in its briefing, include: "(1) the lack of authority for Plaintiffs to challenge under the APA the state-law decisions of Ohio EPA in the Maumee TMDL; (2) the exclusive original jurisdiction of Ohio's Environmental Review Appeals Commission . . . to hear challenges to Ohio EPA's decisions in the Maumee TMDL . . . ; and (3) the CWA's limited standard of review . . . which does not permit [U.S. EPA] to disturb Ohio EPA's substantive decisions underlying the Maumee TMDL." Coal. Br. at 16 (citing R. 38 (Coal. Mot. at 54–55) (Page ID #1575–76)).

It is not entirely clear exactly what the Coalition intends to argue via these defenses. We see two potential readings, neither one of which would rebut the presumption of adequate representation. On one reading of the Coalition's defenses, they fall outside the scope of this case. *See Michigan*, 424 F.3d at 444 (requiring that proposed intervenors' arguments fall within "[t]he scope of the issues in the . . . litigation"). Another interpretation places them within the scope of this case, but the Coalition has not shown any likelihood that U.S. EPA or Ohio EPA will not raise similar defenses. *See Grutter*, 188 F.3d at 401 (requiring proposed intervenor to

"present[] legitimate and reasonable concerns about whether the [existing parties] will present particular defenses").

On the first reading of the Coalition's proposed defenses, one adopted by Plaintiffs and Waterkeeper Intervenors, the Coalition intends to argue that the district court lacks jurisdiction over this suit because it involves the decisions of Ohio EPA, and Plaintiffs did not exhaust available state administrative remedies. *See* R. 38 (Coal. Mot. at 15–16) (Page ID #1517–18). This argument falls outside the scope of this case because, under the APA, Plaintiffs may challenge only U.S. EPA's *approval* of the Maumee TMDL, not the state agency's adoption of the TMDL. It should go without saying that the APA, which applies to "authorit[ies] of the Government of the United States," 5 U.S.C. § 701(b)(1), does not permit direct review of Ohio EPA's actions. Unsurprisingly then, the Coalition does not point to any authority (nor are we aware of any) suggesting that exhaustion of remedies under the APA requires a challenger to raise issues before a state administrative agency, even in the context of the CWA's cooperative federalism regime.

Another way to read the Coalition's proposed defenses is as essentially the other side of the same coin: that Plaintiffs' APA challenge may not be used as a vehicle to litigate whether *Ohio EPA's* actions ran afoul of Ohio law or regulations. There is some support for this reading of the Coalition's proposed argument, given Plaintiffs' allegations that the Maumee TMDL fell short of requirements laid out in Ohio's Administrative Code. *See* R. 1 (Compl. ¶¶ 179–84, 196(d)–(e)) (Page ID #34–35, 38). The problem with this form of the argument, however, is that the Coalition has not provided any reason why the existing parties would not advance it. U.S. EPA is staffed by lawyers familiar with the both the APA and the CWA, and the agency has shown itself adept at raising a variety of jurisdictional defenses in response to TMDL challenges. *See, e.g.*, *Nw. Env't Advocs. v. U.S. EPA*, 745 F. Supp. 3d 1150, 1174 (D. Or. 2024); *Food & Water Watch v. U.S. EPA*, 5 F. Supp. 3d 62, 73 (D.D.C. 2013); *Bravos v. Green*, 306 F. Supp. 2d 48, 54–55 (D.D.C. 2004); *City of Arcadia v. U.S. EPA*, 265 F. Supp. 2d 1142, 1155–59 (N.D. Cal. 2003). Moreover, Ohio EPA has what is perhaps an even greater interest in ensuring that Plaintiffs do not circumvent the procedures set forth in Ohio law for challenging its actions. *See* Ohio Rev. Code § 3745.04 (providing for appeals to the Ohio Environmental Review Appeals

Commission by persons objecting to Ohio EPA actions).  Because both existing defendants have an incentive to limit the scope of Plaintiffs' suit and this form of the Coalition's defense does not conflict with either defendant's interest, the Coalition has not "presented legitimate and reasonable concerns about whether the [U.S. EPA and Ohio EPA] will present [these] particular defenses."  *Grutter*, 188 F.3d at 401; *see also Mich. State AFL-CIO*, 103 F.3d at 1247 ("[I]t may be enough to show that the existing party . . . will not make all of the prospective intervenor's arguments.").

The fact that the Coalition (and not U.S. EPA or Ohio EPA) raised these arguments in its answer does not affect this calculus.  This sort of specific legal argument is not an affirmative defense required to be raised in a responsive pleading.  *See* Fed. R. Civ. P. 8(c).  In short, the Coalition has not "shown that the [agencies] would fail to present such arguments to the district court," and, therefore, has not rebutted the presumption of adequate representation.  *See Michigan*, 424 F.3d at 444.  Its motion to intervene of right was properly denied.

### 3.  Substantial Interest and Impairment

Because the district court relied only upon the adequate-representation prong of the test for intervention of right in denying the Associations' motion, we are left with the question of whether to address the remaining prongs ourselves or remand for the district court's review.  Specifically, the Waterkeeper Intervenors argue that we should remand for the district court to decide in the first instance whether the Associations have demonstrated a substantial interest in the case or that such an interest might be impaired by the relief Plaintiffs seek.  Waterkeeper Intervenors Br. at 42 (citing Fed. R. Civ. P. 24(a)).

We decline this invitation.  Such a remand would, first and foremost, only further delay this long-running case and create the potential for a second interlocutory appeal.  We view such further delay as unnecessary because the parties have already briefed these issues below and the question of a substantial interest and its impairment is a question of law that we review de novo.[7]

---

[7]The Waterkeeper Intervenors cite *Bradley*, wherein "[t]he district court did not rely on untimeliness to deny the proposed intervenors' motion," and we did "not reach the merits of" the timeliness issue on the ground that "it would be improper to make findings on all the relevant criteria without the benefit of the district court's insights."  828 F.2d at 1191–92.  That case is distinguishable in two relevant ways.  The first is that "a trial court's

Reviewing the briefing below, we are convinced that the Associations have met the second and third criteria. As for the second, "we have adopted 'a rather expansive notion of the interest sufficient to invoke intervention of right.'" *WOMP*, 41 F.4th at 771–72 (quoting *Mich. State AFL-CIO*, 103 F.3d at 1245). "[A] specific legal or equitable interest" is not required. *Id.* at 772 (quoting *Mich. State AFL-CIO*, 103 F.3d at 1245). Rather, a party may show a substantial interest by demonstrating an "indirect impact[]" on a legal interest. *Id.* The Associations have done just that here. As they argued in their motion to intervene, their members are affected by the implementation of the Maumee TMDL, and a court order setting aside the TMDL on the ground that it is not stringent enough would almost certainly result in a more substantial regulatory burden on the Associations' members. *See* R. 19-1 (Ass'ns Mem. in Support of Mot. at 7–10) (Page ID #215–18). The burden for demonstrating impairment of a substantial interest, the third factor, is likewise "minimal." *Mich. State AFL-CIO*, 103 F.3d at 1247. For the just-described reasons and because "the precedential effect of an adverse ruling in the district court could hinder" their future legal interests, we hold that the third requirement is also met. *Id.*; *see also WOMP*, 41 F.4th at 774. We accordingly conclude that the Associations have demonstrated that all four criteria for intervention of right are met.[8]

In sum, we apply the same standard to both the Associations' and the Coalition's motions to intervene of right. Because the Associations have adequately set forth a line of argumentation that is specific to them and have met their burden on the other factors, we reverse the district court's decision denying their motion and remand for the district court to grant intervention. The Coalition, by contrast, has not shown inadequacy of representation because it has not articulated arguments that are both relevant and unlikely to be raised by any existing defendant.

---

decision with respect to the timeliness of a motion to intervene is reviewed under an abuse of discretion standard," as opposed to de novo. *Grubbs v. Norris*, 870 F.2d 343, 345–46 (6th Cir. 1989). Second, there was no need in *Bradley* to consider whether remand would be appropriate because, unlike here, we held that the proposed intervenor *had not* shown inadequate representation. 828 F.2d at 1193.

[8]No party appears to contest that the motion to intervene—which was filed prior to any briefing on the merits—was timely.

## C. Permissive Intervention

This leaves us with the Coalition's motion for permissive intervention under Rule 24(b)(1)(B), which provides that a district court "[o]n timely motion . . . may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."[9]  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  The rule, therefore, outlines a two-step inquiry.  To permit intervention, a district court must first satisfy itself that the proposed intervenor's motion is timely and that its claim or defense "shares a common question of law or fact" with those of the existing parties.  Fed. R. Civ. P. 24(b)(1)(B).  If those criteria are met, the district court then balances "undue delay, prejudice to the original parties, and any other relevant factors," and its balancing "is reviewed for an abuse of discretion."  *Mich. State AFL-CIO*, 103 F.3d at 1248.  This discretion, we have held, "has bounds."  *Buck v. Gordon*, 959 F.3d 219, 224 (6th Cir. 2020).  "[U]nless the basis for the decision is obvious from the record, the court must 'provide enough of an explanation for its decision to enable us to conduct meaningful review.'"  *Id.* (quoting *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 577 (6th Cir. 2018)).  But where such an explanation is obvious or stated in the record, we will reverse only where we are left "with a 'definite and firm conviction that the trial court committed a clear error of judgment[.]'"  *Id.* (quoting *Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003)).

The district court did not abuse its discretion in denying the Coalition's motion for permissive intervention.  It did not address the first step of the inquiry, and we will likewise assume that these criteria (timeliness and a common question) are met.  The district court began by reiterating its finding from its intervention-of-right analysis that the Coalition's proposed legal defenses were not relevant to the case's disposition.  R. 68 (Mem. Op. at 11) (Page ID #2084).  As described above, we agree with this finding.  We further agree that this consideration is appropriate in determining whether permissive intervention is warranted.  *See Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018) (holding that district court acted within

---

[9]Because we remand with instructions to grant the Associations' motion for intervention of right, we need not address whether the district court abused its discretion in denying their motion for permissive intervention.

its discretion in considering factors governing intervention of right when denying permissive intervention).

The district court did not stop there, however, and considered the Coalition's "substantial expertise relevant to the underlying subject matter addressed by the Maumee TMDL." R. 68 (Mem. Op. at 11) (Page ID #2084). But because these arguments and expertise fell largely outside the scope of this case, it concluded that permitting the Coalition to intervene in this complex case—which already had four sets of parties participating—would do more to delay and further complicate this already-complex matter than aid in its resolution. *See id.* ("Including [the Coalition's] arguments in the litigation now would be premature and 'unnecessarily complicate this case and delay the proceedings.'" (quoting *Ohio v. U.S. EPA*, 313 F.R.D. at 71–72)). This weighing of the respective factors in favor of and against intervention places the district court's decision in the heartland of Rule 24(a)'s zone of discretion. Whether or not we would have given the same weight to the competing considerations of the Coalition's expertise and the effect that allowing an additional party to participate would have on this litigation, we are not convinced "that the trial court committed a clear error of judgment." *Buck*, 959 F.3d at 224 (quoting *Tahfs*, 316 F.3d at 593).

The Coalition disagrees with the district court's findings, arguing that because Plaintiffs are making specific legal arguments about whether the Maumee TMDL meets certain statutory or regulatory requirements, "[h]ow such changes could impact intervenors" is highly relevant to this case. Coal. Br. at 21. Setting aside that this argument is more appropriate for an intervention-of-right analysis, it misunderstands the nature of the case. True, Plaintiffs allege that the Maumee TMDL falls short of certain regulatory thresholds. *See* R. 1 (Compl. ¶¶ 193–98) (Page ID #37–39); 5 U.S.C. § 706(2). But the "scope of the relief" available is binary: the district court will either hold unlawful and set aside the Maumee TMDL, or it will not. The existing parties have at their disposal anything in the record or the law that might support the Maumee TMDL, and, as we explained, the Coalition has not shown that it possesses any unique arguments that would likely go unaddressed without its participation. If the Coalition wishes to raise further practical concerns regarding the impact of this case on its membership, such arguments are more appropriate via amicus participation, which the district court has already

indicated it intends to permit.  *See* Minute Order, Case No. 3:24-cv-779 (N.D. Ohio Dec. 16, 2024).

### III.  CONCLUSION

For these reasons, we **REVERSE** the district court's decision denying the Associations' motion to intervene, **AFFIRM** the district court's denial of the Coalition's motion to intervene, and **REMAND** for further proceedings consistent with this opinion.